**Mervin E. BROKKE, Plaintiff,**

v.

**STAUFFER CHEMICAL CO., Chesebrough–Ponds, Inc., Unilever United States, Inc., Imperial Chemical Industries, Akzo America, Inc., Defendants.**

**Civ. No. B–87–689(WWE).**

United States District Court, D. Connecticut.

Dec. 28, 1988.

---

Joseph N. Varon, Victoria de Toledo of Wynn, Casper & de Toledo, Stamford, Conn., for plaintiff.

Mary Eigel Schifferli of MacMillian & Associates, Stamford, Conn., for defendants.

## ORDER

EGINTON, District Judge.

After review and over objection, the considered and well-reasoned opinion of the magistrate is ADOPTED, RATIFIED, and AFFIRMED.

## MAGISTRATE'S OPINION

THOMAS P. SMITH, United States Magistrate.

This is an action brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count One), and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Counts Nine and Ten). The Fourth Amended Complaint also contains various claims premised on state law (Counts Two through Eight). Pending are motions for summary judgment or to dismiss certain claims against Defendants Chesebrough–Ponds, Inc. ("Chesebrough") and Unilever United States, Inc. ("Unilever") or to drop Unilever as a misjoined party (Filing No. 70); defendant Stauffer Chemical Company's ("Stauffer") motion to dismiss and to strike (Filing No. 122); a motion to dismiss or for summary judgment by defendants Imperial Chemical Industries of America, Inc. ("ICIA") and Akzo America, Inc. ("Akzo") (Filing No. 145); and a motion to dismiss or for summary judgment by Unilever and Chesebrough (Filing No. 159). For all of the reasons that follow, the defendants' motions are granted with respect to Counts Two through Eight of the Fourth Amended Complaint, granted as to the plaintiff's claim for punitive damages, and denied in all other respects.

## I.

All five defendants contend that pendent jurisdiction should not be exercised over the plaintiff's state law claims as set forth in Counts Two through Eight of the Fourth Amended Complaint. *See* Defendants' Memoranda, Filings No. 71, 123 & 131. It is undisputed that, since the plaintiff is a citizen of Connecticut and defendants Stauffer and Chesebrough also maintain their corporate headquarters in this state, no complete diversity exists between the plaintiff and each defendant as required by 28 U.S.C. § 1332(a)(1), and therefore federal subject-matter jurisdiction cannot be invoked on that basis. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed. 2d 274 (1978).

The defendants also do not dispute this court's *power* to hear the plaintiff's pendent state law claims, since they apparently derive from a "common nucleus of operative fact" that also underlies the plaintiff's federal claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The gravamen of the defendants' argument is that this court should, as a matter of discretion, decline to exercise that power.

In *United Mine Workers,* the Supreme Court stated that pendent jurisdiction is justified by "considerations of judicial economy, convenience, and fairness to litigants; if these are not present, a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers,* 383 U.S. at 726, 86 S.Ct. at 1139. The court also found that dismissal of pendent claims would be justified when the state law issues would "substantially predominate" or when resolution would require a "needless decision[ ] of state law." *Id.* If the likelihood of jury confusion would be sufficient to separate the federal and state claims for trial under F.R.Civ.P. 42(b), the Court indicated that jurisdiction over the pendent claims should "ordinarily be refused." *United Mine Workers,* 383 U.S. at 727, 86 S.Ct. at 1139.

The defendants contend that if pendent jurisdiction is exercised over plaintiff's state law claims, "jury confusion, judicial inefficiency, and unfairness to the litigants ... would result...." Defendants' Memorandum, Filing No. 71, at 18. More specifically, the defendants argue that: in order for the plaintiff to recover under a state law claim, a "very substantial" amount of evidence not relevant to the ADEA or ERISA claims will need to be presented that will dominate the plaintiff's case; it is likely that a jury could return inconsistent verdicts; the court would become involved in unsettled areas of state law; and the plaintiff should not be permitted to expand his remedies under ADEA by asserting additional state law claims that permit the recovery of punitive damages.

If pendent jurisdiction were to be exercised over Counts Two through Eight, the issues and kinds of proof involved in the resolution of plaintiff's state law claims would certainly differ from the issues and proof involved in the federal claims. The critical evidence which the plaintiff will need to present under his ADEA claim, for instance, will include either evidence of direct discriminatory conduct, or proof that Stauffer's employment policies were applied differently to younger workers than to older workers. *See Arnell v. Pan American World Airways, Inc.*, 611 F.Supp. 908, 909 (S.D.N.Y.1985); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 920–21 (2d Cir.1981). Plaintiff's state law claims, however, are premised on an alleged oral agreement that he would not be terminated by Stauffer without cause. The seven counts which contain his pendent claims implicate a broad array of common-law fraud and contract principles, from implied covenants of good faith and fair dealing to promissory estoppel and fraudulent misrepresentation.

Under *United Mine Workers*, however, the relevant inquiry is not whether *different* types of proof and issues are involved in the fedral and state claims, or whether evidence irrelevant to the former would necessarily be presented. As the Court stated:

> If it appears that the state issues *substantially predominate*, whether in terms of proof, or the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice.

*United Mine Workers*, 383 U.S. at 726, 86 S.Ct. at 1139 (emphasis added).

Attempting to predict the nature and complexion of a trial based solely on the allegations contained in the complaint is an inexact and subjective process at best. Although the question is a close one, it appears that the plaintiff's state law claims set forth in Counts Two through Eight would substantially predominate the federal claims stated in the three remaining counts. Because of the sheer number of state law claims being asserted, the plaintiff would be required to present a greater quantum of proof in order to establish a basis for recovery on those claims than would be necessary under ADEA and ERISA. The scope of the issues raised by Counts Two through Eight is also significantly more expansive than that encompassed by the remainder of the complaint, given the length of the plaintiff's employment and the relatively brief period of time relevant to his federal claims. Similarly, it is clear by including state law claims such as breach of contract that would permit the recovery of punitive damages, the plaintiff is seeking a more comprehensive remedy than would be otherwise available to him, at least under ADEA.[1]

The lack of a clear consensus among the district courts regarding the exercise of pendent jurisdiction in ADEA or ERISA cases amply highlights the fact-sensitive and essentially discretionary nature of the decision. A majority of decisions in this circuit, however, have declined pendent jurisdiction over similar state law claims. *See*

---

1. Plaintiff concedes that punitive damages are not recoverable under ADEA. *See* Plaintiff's Memorandum, Filing No. 91; *see also Johnson*

*v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 147 (2d Cir.1984).

*Koehler v. Chesebrough–Ponds, Inc., slip op.*, 705 F.Supp. 721 (D.Conn.1988); *Herbst v. Chesebrough–Ponds, Inc.*, Civ. No. H–85–481(TEC), *slip op.* (D.Conn., Sept. 16, 1986) [1986 WL 22358]; *Snyder v. J.M. Ney, Inc.*, Civ. No. H–85–653(JAC), *slip op.* (D.Conn. March 5, 1987) [1987 WL 14970].

Those cases in which pendent jurisdiction has been exercised in an ADEA or ERISA action are easily distinguishable. In *LeBlanc v. City of Stamford*, Civ. No. B–88–63(TFGD), *slip op.* (D.Conn. May 10, 1988) [1988 WL 148431], the court permitted *one* claim for negligent infliction of emotional distress to be added to the plaintiff's ADEA action. Similarly, in *Carroll v. General Datacomm Industries, Inc.*, 680 F.Supp. 71 (D.Conn.1987), a single common-law cause of action for breach of an implied contract was included along with the federal claims. *Carroll* also dealt with an employment relationship which spanned a mere 30 months, as opposed to the 25 years involved in the present action.

After full and careful consideration of all of the relevant factors as enunciated in *United Mine Workers*, it is apparent that the plaintiff's state law claims constitute "the real body of the case, to which the federal claim[s] [are] only an appendage." *United Mine Workers*, 383 U.S. at 727, 86 S.Ct. at 1140. As a result, this court should decline to exercise pendent jurisdiction over those claims.[2] Accordingly, Counts Two through Eight of the Fourth Amended Complaint should be dismissed without prejudice as to all defendants.

## II.

Three defendants (ICIA, Akzo and Unilever) seek dismissal and/or summary judgment with respect to the plaintiff's ADEA claim (Count One)[3] on the grounds that they have been misjoined as party defendants. *See* Defendants' Memoranda, Filings No. 71 and 126. The defendants argue that despite plaintiff's general allegations in Count One, he has failed to allege any particularized wrong committed by them sufficient to render them proper defendants. Akzo, ICIA and Unilever also contend that they were not involved in the decision to terminate the plaintiff's employment, and that they did not variously assume Stauffer's liabilities as part of their acquisition of Stauffer's and/or Chesebrough's assets.

Plaintiff contends that defendants Chesebrough and Unilever entered into an Agreement and Plan of Merger on December 1, 1986, whereby the latter would assume control of Stauffer and would assume responsibility for Stauffer's existing severance and other benefit plans. *See* Plaintiff's Memorandum, Filing No. 91, Exhibit D. Similar agreements involving compensation and benefit programs were allegedly involved in the ICIA purchase of Stauffer from Chesebrough and the subsequent acquisition of Stauffer by Akzo. *See* Plaintiff's Memorandum, Filing No. 149, at 7–9.

If the ordinary rules regarding the relationship between parent corporations and their subsidiaries were followed, there would be little difficulty in finding that the plaintiff has failed to demonstrate a sufficient degree of operational control or "nexus" to permit the three "parent" defendants from being held liable under plaintiff's claim of age discrimination. *See, e.g., Linskey v. Heidelberg Eastern, Inc.*, 470 F.Supp. 1181 (E.D.N.Y.1979). But, the circumstances of the present case provide several reasons why a different analysis is warranted. For one, the defendants' motion is essentially procedural; it does not address the merits of the plaintiff's allegations of discrimination. They have argued, in effect, that culpability can only attach to Stauffer, and/or Chesebrough since, at the time of plaintiff's termination, the other corporate defendants had no proprietary or other interests in either of those entities.

---

**2.** Because of the disposition of the defendants' motions with respect to the exercise of pendent jurisdiction, it is unnecessary to consider their other arguments pertaining to Counts Two through Eight.

**3.** Since the defendants have referred to affidavits and other materials outside of the pleadings, their motion will be considered as one pursuant to F.R.Civ.P. 56. *See* 2A J. Moore, *Federal Practice*, para. 12.07[2.–5] (2d ed. 1988).

Plaintiff, however, has raised the possibility that while ICIA, Akzo, or Unilever may not be held culpable in the sense of being the party or parties that actually engaged in discriminatory conduct, any or all of these defendants may have agreed to assume some liability for damages that may accrue to the plaintiff as a result of Stauffer's decision to terminate his employment.

Given the odious nature of *any* allegation of discrimination, it is clearly in the best interests of all of the parties concerned to avoid removing party defendants on procedural or technical grounds prior to a consideration of the merits of the plaintiff's complaint. Accordingly, on the instant record the defendants' motion to dismiss and/or for summary judgment with respect to Count One should be denied.

### III.

Four defendants (Akzo, ICIA, Chesebrough and Unilever) have moved for summary judgment with respect to Counts Nine and Ten on the grounds that the plaintiff lacks standing under 29 U.S.C. § 1132 to pursue an ERISA claim.[4] *See* Defendants' Memoranda, Filings No. 126 and 160. "Standing" to bring civil actions under the federal statute is carefully restricted to "participant or beneficiaries" of ERISA-covered benefit claims. *See* 29 U.S.C. § 1132(a)(1)(B)(a)(2); *see also Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 892–93 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). "Participant" is defined in § 1002(7) as "any employee or former employee of an employer ... who is or may become eligible to receive benefits ... from an employee benefit plan which covers employees of such employer...." *See Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (2d Cir.1985). Section 1002(6) defines "employee" as "any individual employed by an employer," the latter term being defined in § 1002(5) as "any person acting directly as an employer,

or indirectly in the interest of an employer, in relation to an employee benefit plan; ..."

Defendants argue that since they did not acquire any ownership interest in Stauffer until several months after the plaintiff was terminated in December of 1986, plaintiff was never "an employee" of the defendants and also, therefore, does not qualify as a "participant" within the meaning of the statute.

Plaintiff responds that a genuine issue of material fact exists regarding the liability of the four defendants who acquired ownership interests in Stauffer subsequent to the plaintiff's termination. Plaintiff points specifically to certain indemnification provisions in the purchase and sale agreements between ICIA and Akzo that could be interpreted to impart liability to either ICIA or Akzo. In addition, plaintiff argues that Chesebrough and Stauffer were sufficiently interrelated in their ownership and operations to be considered "integrated enterprises" under the "single employer" rule articulated in labor relations cases. *See Radio and Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965).

Summary judgment is appropriate only where there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. F.R.Civ.P. 56; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). The defendants do not dispute that the plaintiff was an employee of Stauffer who was eligible to receive benefits from an employee benefit plan, and who was, therefore, a "participant" within the meaning of § 1132. As a participant in an ERISA-covered plan, plaintiff clearly has standing to pursue his claim for severance benefits. The question, therefore, is not whether the plaintiff was an employee of ICIA, Akzo, Chesebrough or Unilever, or a participant in a plan administered by

---

**4.** It should be noted that it is not clear from the face of the complaint precisely which subsections of the federal statute the plaintiff is relying on. Since Count Nine is labelled "Enforcement of Plan Benefits," it is presumed that the plaintiff is invoking § 1132(a)(1)(B). Count Ten ("Breach of Fiduciary Duty") presumptively implicates § 1132(a)(2).

them, but whether any of those entities are liable to the plaintiff for benefits that accrued to him as an employee or a former employee of Stauffer. Although § 1132 specifies who may initiate civil actions under ERISA, this statute does not similarly delimit the class of potential defendants. In certain circumstances, non-"employer" defendants have been held liable for contributions or benefits arising under ERISA-covered plans. *See Ottley v. Sheepshead Nursing Home,* 784 F.2d 62 (2d Cir.1986) (private receiver who was interested in purchasing nursing home held liable); *Trustees of Amalgamated Insurance Fund v. Danin,* 648 F.Supp. 1142 (D.Mass.1986) (corporate officers with significant ownership interests held liable). Particularly when an ERISA suit may not be brought until several years after an individual has retired or been terminated, it is disengenious to suggest that a corporate entity that obtains an ownership or proprietary interest in the quondam employer cannot properly be named as a defendant in the action. The plaintiff's reference to certain provisions in the ICIA–Akzo purchase agreement involving indemnification for "litigation," among other things, indicates that a genuine issue of material fact exists as to Akzo's and/or ICIA's liability for benefits owed to Stauffer employees. *See* Plaintiff's Memorandum, Filing No. 149 at 7–9.

A similar analysis applies with respect to defendants Chesebrough and Unilever. Plaintiff has adequately demonstrated that, even though he may not have been employed by either corporation, a genuine dispute exists regarding the liability of Chesebrough and/or Unilever for the benefits being claimed in Counts Nine and Ten.

Further, it would be singularly inappropriate, at this stage of the litigation, to forestall resolution of the merits of the plaintiff's complaint on technical or procedural grounds. On the basis of the present record, it is clear that no defendant has been misjoined, as that term is usually understood. Given the convoluted, somewhat confusing history of divestitures and acquisitions involving Stauffer, it is impossible

to determine where the ultimate burden of an eventual judgment in favor of the plaintiff may fall. Many alternatives are available later in the proceedings, such as carefully drafted jury instructions, to avoid the unwarranted imposition of that burden on a particular defendant. Plaintiff's assertion is also well-taken that if certain defendants are dismissed prior to a consideration of the merits, the defendant who may ultimately be found to be liable may then argue that actual liability should have attached to a corporate party previously dismissed. Since it appears that there is a triable, factual dispute regarding the liability of Akzo, ICIA, Chesebrough and Unilever, defendants' motion for summary judgment with respect to Counts Nine and Ten as to these defendants should be denied.

### IV.

All five defendants have also moved to strike plaintiff's jury demand with respect to his ERISA claims (Counts Nine and Ten). *See* Defendants' Memoranda, Filings No. 71, 123 & 131. Defendants argue that recent case law in this district and elsewhere supports the conclusion that jury trials are not available in ERISA cases. *See e.g., Tourangeau v. Uniroyal, Inc.,* Civ. No. N–86–208, *slip op.* (D.Conn. Nov. 7, 1987), and cases cited therein. Plaintiff contends that since his ERISA claims are predicated on a breach of an employment contract, they are essentially legal in nature and he is therefore entitled to a jury trial by virtue of the Seventh Amendment. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Although plaintiff acknowledges that "[in] the great majority of ERISA cases raising the issue of whether a jury trial should be available, plaintiffs have alleged claims brought under § [1132](a)(1)(B) seeking benefits under a plan ...," and that in "virtually all of these claims ... circuit courts ... hold that no jury trial is available," he attempts to distinguish his own claims as being premised on breach of contract. Despite this somewhat facile argument, Count Nine is labeled "Enforcement of Plan Benefits," which clearly implicates § 1132(a)(1)(B).

The Second Circuit Court of Appeals has sent conflicting messages regarding the availability of jury trials for ERISA actions. *Pollock v. Castrovinci*, 476 F.Supp. 606 (S.D.N.Y.1979), which relied on *Stamps v. Michigan Teamsters Joint Council 43*, 431 F.Supp. 745 (E.D.Mich.1977), in holding that an ERISA claimant had a right to a jury trial, was affirmed without opinion. *Pollock v. Castrovinci*, 622 F.2d 575 (2d Cir.1980) (mem.). In *Katsaros v. Cody*, 744 F.2d 270 (2d Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), the court "declined to follow" *Pollock*, and noted that since the plaintiffs sought "equitable relief in the form of removal and restitution as distinguished from damages for wrongdoing or non-payment of benefits," trial to a jury would not be available. *Katsaros*, 744 F.2d at 278.

Subsequent decisions in this district and elsewhere have not reflected a consensus regarding the availability of a jury trial in ERISA actions. *See In re Emhart Corp.*, slip op., 706 F.Supp. 153 (D.Conn., 1988) (striking jury demand); *Abrams v. Grand Light & Supply Company*, Civ. No. N–84–158(WWE) *slip op.* (D.Conn., September 26, 1986) (same); *Powell v. General Dynamics Corp.*, Civ. No. H–85–496(MJB), *slip op.* (D.Conn., November 25, 1985) (same). *But see Abbarno v. Carborundum Co.*, 682 F.Supp. 179, 181–82 (W.D.N.Y.1988) (allowing jury demand); *Zotto v. Scoville, Inc.*, Civ. No. N–85–494(JAC), *slip op.* (D.Conn., May 27, 1985) (same).

Given the seemingly fluid state of the law on this question, to strike the plaintiff's demand for a jury trial at this stage of the proceedings would be imprudent. The plaintiff should be permitted to try to a jury those claims that he has a right to try to a jury at the time this matter is scheduled for trial. The determination of whether plaintiff has a right to a jury trial on any or all of his claims will be made as close to the actual trial as is practicable, in the light of the law as it exists at that time. Defendants' motion to strike the plaintiff's

jury demand with respect to Counts Nine and Ten is therefore denied.

### V.

■ . Defendants have also moved, pursuant to F.R.Civ.P. 12(f), to strike the plaintiff's claim for punitive damages from the prayer for relief. *See* Defendants' Memoranda, Filings No. 71, 123 & 131. Since the plaintiff's pendent state law claims have been dismissed, his request must be stricken unless punitive damages are available under ERISA.[5] The plaintiff argues that the question whether punitive damages are ever recoverable under ERISA was left unresolved in *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Plaintiff further contends that *Bartucca v. Katy Industries, Inc.*, 668 F.Supp. 111, 114 (D.Conn.1987), where it was held that punitive damages are not available under § 1132, should be distinguished from the present case and strictly limited to its facts.

In *Russell*, the Supreme Court held that § 409(a) of ERISA, 29 U.S.C. § 1109(a), does not permit recovery of "extra-contractual" damages by a plan beneficiary for breach of fiduciary duty by plan administrators. As Justice Brennan emphasized in his concurrence, the Court did not discuss the damages that may be recoverable under § 1132(a). *See Russell*, 473 U.S. at 148–58, 105 S.Ct. at 3093–98 (Brennan, J., concurring). In *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), however, the Court did hold that ERISA's civil enforcement remedies are exclusive and therefore preempt any state law remedy. At least one court of appeals has taken *Pilot Life* as an indication that the Court would hold that ERISA does not permit recovery of punitive damages. *See Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir.1987). Other courts of appeals (for the 4th, 5th and 7th circuits) have reached the same

---

5. Plaintiff concedes that punitive damages are not available under ADEA. *See* Plaintiff's Memorandum, Filing No. 91, at 28–29; *supra* note 1.

results. *See Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618 (7th Cir.1987); *Sommers Drug Stores Company Employee Profit Sharing Trust v. Corrigan Enterprises*, 793 F.2d 1456, 1464–65 (5th Cir.1986), *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987); *Powell v. Chesapeake and Potomac Telephone Co.*, 780 F.2d 419, 424 (4th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986).

Plaintiff's contention that the facts of the present case are more "egregious" than those in *Bartucca, see* Plaintiff's Memorandum, Filing No. 91 at 30, and that a "trier" might reasonably find that the defendants acted wilfully and oppressively, *id.* at 31, are not legitimate grounds for distinguishing the two cases, but merely thinly veiled arguments that address the merit of plaintiff's claim for punitive damages. When the issue of the availability of punitive damages has been directly considered, the clear weight of authority supports the conclusion that only compensatory damages are included within the ambit of § 1132, which provides for "redress" of statutory violations. Accordingly, the defendants' motion to strike plaintiff's claim for punitive damages should be granted.

### VI.

 Finally, defendants Unilever and Chesebrough have moved to strike certain allegations of the complaint because they are immaterial, impertinent, and/or scandalous. In particular, defendants object to the following: "On or about December 1, 1986, Unilever assumed a liability for compensation, severance and other benefit payments and is therefore responsible for the acts described herein." Fourth Amended Complaint, Count One, ¶ 4. Defendants argue that this allegation is "baseless" because Unilever did not assume any Chesebrough liabilities until sometime in 1987.

Motions to strike are generally not favored. *See Schramm v. Krischell*, 84 F.R.D. 294, 299 (D.Conn.1979); 2A J. Moore, *Federal Practice*, ¶ 12.21[2] (2d ed. 1988). As Judge Burns has stated, Rule 12(f) motions "will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Schramm*, 84 F.R.D. at 299. Clearly, the language at issue is not immaterial, impertinent or scandalous. Defendants merely assert that it is incorrect. *Allegations* in a complaint obviously cannot be stricken simply because a defendant challenges their *factual* basis. Accordingly, the defendants' motion is denied.

### VII.

For all of the foregoing reasons, defendants' motion to dismiss Counts Two through Eight of the Fourth Amended Complaint is granted. Defendants' motion to strike plaintiff's claim for punitive damages is granted. In all other respects, the pending motions are denied.

Both parties may seek review of this decision by an Article III judge as contemplated by statute and the Local Rules.

Dated at Hartford, Connecticut, this 9th day of December, 1988.