Leonard COLODNY, Plaintiff,

v.

IVERSON, YOAKUM, PAPIANO & HATCH, a California general partnership, and John M. Garrick individually and as a general partner of Iverson, Yoakum, Papiano & Hatch, Defendants.

No. 93–1464–CIV–T–17C.

United States District Court, M.D. Florida, Tampa Division.

Nov. 19, 1993.

Sanford Lewis Bohrer, Bohrer & Aprill, P.A., Miami, FL, for plaintiff.

John M. Garrick, Iverson, Yoakum, Papiano & Hatch, Los Angeles, CA, for defendants.

---

### ORDER ON MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' Motion to Dismiss the Complaint, to Strike Part of the Complaint, and to Dismiss Defendant IVERSON, YOAKUM, PAPIANO & HATCH for Lack of Personal Jurisdiction filed September 7, 1993, and response thereto filed September 23, 1993.

### STANDARD OF REVIEW

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a Motion to Dismiss, is required to view the Complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### FACTS

Plaintiff is co-author of *Silent Coup: The Removal of a President* (*"Silent Coup"*), a book, which among other things, claims to expose John Dean as having lied and/or perjured himself during and after his tenure as counsel to the President of the United States. Defendant IVERSON, YOAKUM, PAPIANO & HATCH ("Iverson") is the law firm which represents Maureen Dean and John Dean in a lawsuit ("Dean Lawsuit") relating to the Plaintiff's research, writing, publishing, and promotion of the book *Silent Coup.* Defendant JOHN M. GARRICK ("Garrick") is a general partner in the law firm of Defendant IVERSON. Plaintiff is a defendant in the Dean Lawsuit.

Plaintiff asserts that on May 4, 1993, Defendants wrote a letter to *The Tampa Tribune,* intending that such letter be published. The letter states:

> As for Mr. Locker's statement (in several columns) that Mr. Colodny's unlawful tape recordings "provide the heart of Colodny's defense" and that this firm is trying to suppress these tapes: absolute hogwash! To the contrary, we are confident that full disclosure of *all* the tape recordings made by Colodny will expose Colodny's book *Silent Coup* as a fraud.

Defendants contend that *Silent Coup* illustrates that, unknown to anyone for the last twenty years, former White House Counsel, John Dean, ordered the Watergate break-ins and that after the Watergate arrests of Gordon Liddy and his men, Mr. Dean tricked all of his superiors, including President Richard Nixon, into covering up his crimes. These men were convicted and President Nixon was

removed from office as a direct result of Mr. Dean's perjury.

Defendants insist that the purported documentation for the book is based on hundreds of so-called "on-the-record" interviews, presumably obtained through the use of taped telephone conversations of which the speaker was unaware or had not given consent. Plaintiff's taping of these telephone conversations led to an investigation in October, 1992, by the Florida State Attorney's office, headed by Judy Hoyer.

In January, 1993, after the election of a new State Attorney for Hillsborough County, the investigation of Colodny ended. Colodny then, according to Defendants, began an orchestrated media attack in *The Tampa Tribune* against John Dean and Judy Hoyer. *The Tampa Tribune* printed eight (8) columns authored by Ray Locker which stated, among other things, that John Dean's libel action was bogus, that Defendants had improperly quashed a subpoena, that Defendants were "in cahoots" with Mrs. Hoyer, and that Defendants were trying to suppress Plaintiff's *Silent Coup* tapes.

Defendants state that Colodny and his co-defendants in the Dean Lawsuit began attaching these Ray Locker articles to their pleadings. This activity caused Defendants to directly address Locker's purported misinformation in a letter dated May 4, 1993, signed by Defendant GARRICK (the "Garrick Letter") and written on letterhead of Defendant IVERSON. Defendants sought to correct the statements contained in Ray Locker's columns. Defendants maintain that the letter was not intended for publication.

Twelve days after the letter was sent to *The Tampa Tribune*, it was published in the "Commentary" section of the paper's editorial page. On or about June 15, 1993, Plaintiff filed suit in Florida state court alleging he had been defamed by the statement: "... we are confident that full disclosure of *all* the tape recordings made by Colodny will expose Colodny's book *Silent Coup* as a fraud." (the "Actionable Statement"). On September 3, 1993, Defendants filed a Notice of Removal to Federal Court.

## DISCUSSION

### DEFENDANT'S MOTION TO DISMISS

■ Plaintiff's Complaint (93–04766) was originally filed in the Circuit Court for Hillsborough County, Florida, on June 15, 1993, and was removed by Defendants to federal court on September 3, 1993. The Court's inquiry on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 935 (5th Cir. 1988); *Durant v. Maher Chevrolet, Inc.*, 759 F.Supp. 787 (M.D.Fla.1991). The Court is required to accept all allegations in the complaint as true, and must view the complaint in the light most favorable to the plaintiff. *Mahon v. Largo*, 829 F.Supp. 377 (M.D.Fla. 1993); *Twigg v. Hospital District of Hardee County*, 731 F.Supp. 469, 470 (M.D.Fla.1990) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Viewed in the light most favorable to the plaintiff, the complaint properly alleges a cause of action for defamation including allegations of express malice to overcome the defense of qualified privilege and to justify a prayer for relief of punitive damages. The Court finds that Plaintiff has sufficiently alleged facts and elements of law necessary to sustain his complaint.

### DEFENDANT'S MOTION TO STRIKE

■ Defendants request that Paragraph 9 of Plaintiff's Complaint which states: "Until defendants made the ["Actionable Statement"], plaintiff had never been accused of fraud or perpetrating a fraud," be stricken because it is not grounded in fact pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) allows the Court to strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Courts generally disfavor granting motions to strike. *Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.*, 801 F.Supp. 684, 694 (S.D.Fla.1992) (citing *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir.1982)).

■ In *Brokke v. Stauffer Chem. Co.*, 703 F.Supp. 215, 223 (D.Conn.1988), the court

found that allegations in a complaint cannot be stricken simply because a defendant challenges their factual basis. The procedural device of Motion to Strike is inappropriate where the specific allegation of the complaint constitutes neither an insufficient defense nor a redundant, immaterial, impertinent or scandalous allegation. *Drewett v. Aetna Casualty & Surety Co.*, 405 F.Supp. 877, 878 (W.D.La.1975). Defendants do not allege that paragraph 9 contains "redundant, immaterial, impertinent, or scandalous matter". Further, Defendants fail to cite a single case to support its proposition that allegations which a Defendant claims "are not grounded in fact" should be struck from a complaint pursuant to Rule 12(f).

### DEFENDANT, IVERSON, YOAKUM, PAPIANO & HATCH'S, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■ In reviewing this Motion, this Court is cognizant that the plaintiff's various claims should not be dismissed for lack of in personam jurisdiction unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish personal jurisdiction over the defendants. *Moltz v. Seneca Blance, Inc.*, 606 F.Supp. 612, 614 (S.D.Fla. 1985) (citing *McKinnis v. Mosley*, 693 F.2d 1054, 1058 (11th Cir.1982)) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

*Structural Panels, Inc. v. Texas Aluminum Industries, Inc.*, 814 F.Supp. 1058 (M.D.Fla.1993), states that in order to determine whether the court may exercise personal jurisdiction over a nonresident defendant, the court must determine: (1) whether the state long-arm statute permits assertion of jurisdiction and (2) whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice" under *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). See *Cable/Home Communication Corp. v. Network Productions*, 902 F.2d 829, 855 (11th Cir.

1990). Florida Statute Section 48.193 provides, in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

■ Defendant IVERSON correctly states that the reach of the Florida long-arm statute is a question of Florida law, and Federal Courts are required to construe it as would the Florida Supreme Court. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890–91 (11th Cir.1983). Defendant also correctly states that in Florida, a partner is an agent of the partnership when carrying on the business of the partnership in the usual way. Fla.Stat. § 620.60(1). However, this Court does not agree that the letter written to the Tampa Tribune by Defendant GARRICK on the letterhead of IVERSON was not authorized by IVERSON nor part of IVERSON's "usual" business. As a partner in IVERSON, GARRICK'S acts in the partnership's name bind the partnership. The Florida Partnership Act provides:

Every partner is an agent of the partnership for the purpose of the business. The act of every partner including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no authority.

Section 620.60, Fla.Stat. The letter written by GARRICK does not purport to have been written solely on a personal basis, but ap-

peared on the letterhead of IVERSON and was signed by GARRICK "of Iverson, Yoakum, Papiano and Hatch". Further, the letter makes no less than seven references to "this law firm" and "our office", and with one exception, consistently uses the pronouns "us" and "we", clearly referring to IVERSON. The letter was obviously written and published in connection with IVERSON's representation of John and Maureen Dean, and therefore part of the usual business of the law firm.

Defendant IVERSON admits that GARRICK is a partner of the firm and therefore, an agent of the law firm. IVERSON and GARRICK do not contest this Court's jurisdiction over GARRICK, apparently conceding that the publishing of the letter in Florida was sufficient to confer jurisdiction over GARRICK. Where GARRICK had either actual or apparent authority to publish the letter on behalf of IVERSON, IVERSON has allegedly committed a tortious act in Florida thereby submitting itself to the jurisdiction of Florida Courts. Therefore, this Court finds that the long-arm jurisdiction of Florida applies to IVERSON.

Additionally, sufficient "minimum contacts" exist regarding IVERSON to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice" under the test of *International Shoe Co.* The court may exercise specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities to the forum state and the alleged injury to the forum resident arises out of those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985). The nonresident's activities and connection with the forum state must be such that the defendant would "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). IVERSON, through its agent, GARRICK, purposefully directed the subject letter to the Tampa Tribune for publication in Tampa, Florida. The alleged injury of defamation to the Plaintiff arose out of this spe-

cific activity which took place in this forum. Therefore, IVERSON, has met the "minimum contacts" requirement and should therefore have "reasonably anticipated being haled into court there." Accordingly, it is

**ORDERED** that Defendants Motions to Dismiss and Motion to Strike and for Sanctions be **denied.**

**DONE and ORDERED.**