FILED
3/13/2023
Court of Appeals
Division I
State of Washington

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ISAAC NSEJJERE, and individual, | No. 84003-7-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| NKANA FOOTBALL CLUB, a football club; LUKONDE KASEKO, an individual (sued in his capacity as official of Nkana Football Club at the time of the incident), | |
| Respondent, | |
| and | |
| DOES 1-25, inclusive, | |
| Defendants. | |

COBURN, J. — Isaac Nsejjere appeals from a judgment entered in Nsejjere's favor against Nkana Football Club (NFC) and Lukonde Kaseko. Both NFC and Kaseko defaulted in the underlying proceedings and did not appear at trial. Nsejjere challenges the amount of the judgment, arguing that the trial court should have awarded him more based on the allegations in his complaint and on his requests for admission, to which NFC and Kaseko did not timely respond. Because Nsejjere does not establish an entitlement to relief on appeal, we affirm.

FACTS

On November 9, 2020, Nsejjere filed a complaint against NFC and

Citations and pincites are based on the Westlaw online version of the cited material.

Kaseko.  Nsejjere alleged that in January 2010, an entity called "Nsejjere Sports & Casual Wear" (Nsejjere Sports) entered a "branding and commercializing agreement" with NFC.  According to the complaint, Nsejjere and the defendants

> agreed and understood the economics and magnitude of the opportunity to be had:
>
> i). Express' obligation was to order 20,000 branded shirts over 10 years at $10 each.
>
> ii). That such volume was to be doubled every 3 months for 2 years, then hold that consistent quarterly volume.
>
> iii).  That [Nsejjere] was entitled to 80% of all Nsejjere Sports . . . proceeds and operations.

(Emphasis omitted.)

Nsejjere alleged that NFC and Kaseko "understood that they would not be expected to contribute any money towards initial design, production and delivery of the branded goods stipulated in the contract" and that Nsejjere Sports "would need to raise more funds to effect performance of the agreement."  He claimed that NFC and Kaseko "asked and convinced . . . Nsejjere to individually loan funds to Nsejjere Sports . . . so that [it] effects performance of the contract" and that in doing so, NFC and Kaseko "committed that if NsejjereSports . . . performed based on the loaned funds and that in the event [NFC] ended up not performing, . . . Nsejjere would individually be made whole respective to the loaned money and subsequent expectation of the venture, i.e., mutually anticipated and forecasted economic and financial yields."  He alleged that "[i]n all, by sheer reliance on defendants' assurances, [he] loaned Nsejjere

Sports . . . approximately 80% of the funds it needed to perform" and "ended up owning 80% of Nsejjere Sports."

Nsejjere alleged that NFC breached its agreement with Nsejjere Sports but the defendants "ha[d] not offered to pay . . . Nsejjere the individual money they caused him to loan Nsejjere Sports." Accordingly, he sought "retribution equal to approximately 80% of Nsejjere Sports['] . . . entitlement of the proceeds."

On November 12, 2020, the trial court entered an order authorizing service of process on NFC and Kaseko via letters rogatory. NFC and Kaseko were served in the Republic of Zambia on July 14, 2021. According to a letter attached to Nsejjere's proof of service, the documents served on NFC and Kaseko included requests for admission (RFAs).

NFC and Kaseko did not appear or answer Nsejjere's complaint, and on October 19, 2021, the trial court declared them in default.

On February 11, 2022, Nsejjere filed a trial brief. He represented that the defendants had not responded to his RFAs and asserted that they had thus admitted that "[t]hey induced [Nsejjere] to finance the production of merchandise for soccer supporters and guaranteed his return on investment" and that "[p]rofits were anticipated to exceed $7M."

On March 2, 2022, Nsejjere filed another brief, apparently at the trial court's direction, arguing that despite having obtained an order of default, there was no requirement that he obtain a default judgment rather than proceed to trial. The matter then proceeded to a bench trial at which neither defendant appeared and Nsejjere was the only witness.

3

On April 7, 2022, the trial court entered findings of fact, conclusions of law, and a judgment against NFC and Kaseko. The court found among other things that NFC and Kaseko "agreed to purchase a minimum of 20,000 replica jerseys and other supporter merchandise annually for ten years" and that Nsejjere "reasonably relied on the promises made by Defendants and financed the production of the merchandise." The trial court also determined that NFC and Kaseko "made promises to [Nsejjere] to induce his investment" and that Nsejjere "reasonably relied on these promises and acted on them to his detriment." It concluded that NFC and Kaseko were "liable under the theory of promissory estoppel for [Nsejjere]'s lost investment and the profits he did not receive."

The trial court found that certain exhibits admitted at trial "showed items purchased and shipped to Defendants totaling $1,282.50." It also found that although Nsejjere "asserted that he suffered additional damages," he "did not provide sufficient proof of such losses." It thus entered judgment in Nsejjere's favor in the principal amount of $1,282.50.

On April 13, 2022, Nsejjere sought reconsideration. His motion for reconsideration is not in the record, but his declaration in support is. He attached a copy of a letter, purportedly from a representative of Juron New Century Knitting Textile Co., Ltd. (Juron), stating that Nsejjere paid Juron $215,000 in May 2010 "that was used to dedicate Three factory production lines to [NFC] in Africa, in anticipation of the big orders."

On May 4, 2022, the trial court denied reconsideration, writing,

> [Nsejjere]'s Motion for Reconsideration includes new
> evidence regarding alleged costs incurred. The Court finds that

4

such evidence should have been presented earlier during trial and therefore the Court does not consider it.

Overall, as stated earlier by this Court, [Nsejjere] did not present proof of his alleged losses at trial other than the amount awarded.

Additionally, the Court does not find that Defendant's failure to answer [Nsejjere]'s [RFAs] constitute "admissions" under the circumstances of this case where Defendant has not appeared or filed an Answer, and the Court found Defendant in default.

Nsejjere appeals.

## DISCUSSION

Nsejjere points out that the trial court concluded that NFC and Kaseko were liable under a promissory estoppel theory for Nsejjere's "'lost investment and the profits he did not receive.'" (Emphasis omitted.) He asserts that reversal is required because the trial court erred in determining that Nsejjere's lost investments and profits not received amounted to only $1,282.50. Because none of the arguments Nsejjere advances in support of this assertion are persuasive, we disagree.

Nsejjere first argues that the trial court erred inasmuch as it did not award him 80 percent of $7,000,000, or $5.6 million, as part of the "profits he did not receive." He relies on RFA 14, which stated, "Admit that defendants and Plaintiff reasonably expected agreed to a targeted [*sic*] that Nsejjere Sports to generate more than seven million dollars over the course of the agreement." He asserts that the defendants' failure to respond to RFA 14 "conclusively and irrefutably established that lost profit was at least $7,000,000, of which . . . [Nsejjere] is entitled to 80%."

But CR 36, the rule providing that RFAs are deemed admitted unless

timely answered or objected to, "was not designed to discover facts" but, rather, "to eliminate from controversy matters *which will not be disputed*." Coleman v. Altman, 7 Wn. App. 80, 86, 497 P.2d 1338 (1972) (emphasis added). "It is not a proper use of CR 36 to request an adversary to admit, in effect, the truth of the assertion that he should lose the lawsuit," and "'requests for admissions as to central facts in dispute are beyond the proper scope of the rule.'" Reid Sand & Gravel, Inc. v. Bellevue Props., 7 Wn. App. 701, 704, 502 P.2d 480 (1972) (quoting Pickens v. Equitable Life Assur. Soc., 413 F.2d 1390, 1393 (5th Cir. 1969)). Thus, for example, in Coleman, we affirmed the trial court's decision not to adopt an unanswered RFA as conclusive where it went to a central issue in the litigation, i.e., whether the plaintiff was within the boundaries of an unmarked crosswalk when she was struck by the defendant's vehicle. 7 Wn. App. at 84-85. In doing so, we observed that the plaintiff, who urged adoption of the RFA, could not have been misled by the defendants' failure to answer, and that court rules are intended to enable the court "'to do substantial justice rather than to decide cases upon technicalities which have no relationship whatever to the rights of the parties to the litigation.'" Id. at 85 (internal quotation marks omitted) (quoting Voisin v. Luke, 249 La. 796, 807, 191 So.2d 503 (1966)).

In the instant case, as in Coleman, the RFA at issue goes to a central matter in the litigation—damages, and Nsejjere cannot show that he was prejudiced by the defaulting defendants' failure to timely answer RFA 14. He thus fails to establish that the trial court, which had considerable discretion in deciding what evidence to admit, erred by declining based on a technicality to

accept RFA 14 as proof that Nsejjere was entitled to $5.6 million in damages.[1] See Hume v. Am. Disposal Co., 124 Wn.2d 656, 666, 880 P.2d 988 (1994) ("The admission or refusal of evidence lies largely within the sound discretion of the trial court.").

Furthermore, and independently fatal to Nsejjere's RFA-based argument, RFA 14 is ambiguous as to whether the parties "reasonably expected," "agreed to," or "targeted" something. At most, an admission thereto would establish that the parties "reasonably expected" that Nsejjere Sports would "generate" more than $7 million over the course of the parties' agreement. Such an admission would not conclusively establish that Nsejjere Sports was expected to *profit* by that amount, or that Nsejjere was entitled to an 80 percent share of any profit. We defer to the finder of fact as to the persuasiveness of the evidence, Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007), and Nsejjere does not establish that the trial court erred to the extent it weighed an ambiguous RFA-based admission against the other evidence introduced at trial[2] to find that $1,282.50 was all Nsejjere was entitled to under promissory estoppel—an equitable theory. Cf. Seattle First Nat. Bank, N.A. v. Siebol, 64 Wn. App. 401, 409, 824 P.2d 1252 (1992) (observing that an equitable remedy "is the goal in a promissory estoppel case" and that lost profits are recoverable only if "there is a

---

[1] In a footnote, Nsejjere cites Nelson v. Nelson, 43 Wn.2d 278, 260 P.2d 886 (1953), for the proposition that "[c]ourts MUST construe a party's failure to Answer Request for Admission as evidentiary effect tantamount to sworn testimony admitting to the material allegations of fact." (Emphasis omitted.) Nsejjere claims that in Nelson, the "Supreme Court AFFIRMED a decision grounded on Nelson's failure to Answer." The Nelson court did no such thing.

[2] Because Nsejjere did not prepare a trial transcript or designate any trial exhibits for the record on appeal, we cannot know what evidence was before the trial court.

substantial and sufficient factual basis supporting the amount awarded"). Nsejjere's reliance on RFA 14 is misplaced.

Nsejjere next contends that the trial court erred by not accepting, as true, the allegations in his complaint about (1) his entitlement to 80 percent of Nsejjere Sports' profits and (2) the profit he would have received had the defendants satisfied their alleged "contractual annual obligatory minimum" order quantity. In support, Nsejjere relies on Reid v. Pierce County, 136 Wn.2d 195, 961 P.2d 333 (1998), and Corrigal v. Ball & Dodd Funeral Home, Inc., 89 Wn.2d 959, 577 P.2d 580 (1978), for the proposition that courts must accept the allegations in a plaintiff's complaint as true. But these cases both involved motions to dismiss under CR 12(b)(6). See Reid, 136 Wn.2d at 201; Corrigal, 89 Wn.2d at 961. They do not support the proposition that the trial court was required to accept Nsejjere's damages allegations as true at a bench trial following a default,[3] and Nsejjere cites no authority that does support that assertion.[4] To the contrary, "[a]

---

[3] Nsejjere also cites three federal cases to support this proposition. These cases, apart from being nonbinding, are similarly unpersuasive because they, too, involved motions to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Colodny v. Iverson, Yoakum, Papiano & Hatch, 838 F. Supp. 572, 574 (M.D. Fla. 1993); Bracewell v. Nicholson Air Servs., Inc., 680 F.2d 103, 104 (11th Cir. 1982); see also Lane v. Skamania County, 164 Wn. App. 490, 499-500, 265 P.3d 156 (2011) (federal cases are merely persuasive with regard to substantially similar Washington procedural rules).

[4] Nsejjere cites to Geddes v. United Fin. Grp., 559 F.2d 557 (9th Cir. 1977), Klapprott v. United States, 335 U.S. 601, 336 U.S. 942, 69 S. Ct. 384 (1949), Last Chance Mining Co. v. Tyler Mining Co., 157 U.S. 683, 15 S. Ct. 733, 39 L. Ed. 859 (1895), and Salinas v. Texas, 570 U.S. 178, 133 S. Ct. 2174, 186 L. Ed. 2d 376 (2013). In Geddes, the court did acknowledge the "general rule" that factual allegations of a complaint are taken as true upon a default. 559 F.2d at 560. But it went on to explain that the rule *does not apply* to allegations relating to the amount of damages. Id. In Klapprott, the issue was whether a default judgment that "stripped [a citizen] of his citizenship . . . without evidence, a hearing, or the benefit of counsel, at a time when his Government was then holding the citizen in jail with no reasonable opportunity for him effectively to defend his right to citizenship," could be vacated under Fed. R. Civ. P.

default does not . . . admit any conclusions of law contained within the complaint or the amount of damages." Smith v. Behr Process Corp., 113 Wn. App. 306, 333, 54 P.3d 665 (2002); see also CR 55(b)(2) (authorizing trial court to conduct hearings as necessary to determine the amount of damages, even after a default).

Finally, Nsejjere contends that the trial court erred in not considering the letter stating that he paid $215,000 to Juron. But the trial court noted in its order denying Nsejjere's motion for reconsideration that the letter was new evidence not presented at trial, and "[t]he decision to consider new or additional evidence presented with a motion for reconsideration is squarely within the trial court's discretion." Martini v. Post, 178 Wn. App. 153, 162, 313 P.3d 473 (2013). Nsejjere provides no analysis to persuade us that the trial court's decision not to consider the tardily presented letter was manifestly unreasonable. See King v. Olympic Pipeline Co., 104 Wn. App. 338, 348, 16 P.3d 45 (2000) ("A trial court abuses its discretion only if its ruling is manifestly unreasonable or is based upon untenable grounds or reasons.").[5]

---

60(b). 335 U.S. at 615. In Last Chance Mining, the issue was whether and to what extent a default judgment was *res judicata* in a subsequent proceeding. 157 U.S. at 691-92. And in Salinas, the issue was whether a criminal defendant invoked his Fifth Amendment privilege against self-incrimination. 570 U.S. at 181. None of these nonbinding federal cases are on point.

[5] We note, additionally, that the letter is inadmissible hearsay to the extent offered to prove that Nsejjere paid Juron $215,000. See ER 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); ER 802 ("Hearsay is not admissible except as provided by [the rules of evidence], by other court rules, or by statute.").

Nsejjere does not establish that reversal is warranted.

We affirm.

_____ Colvin, J.

WE CONCUR:

_____                _____
                                         Dwyer, J.