**Pasquale NASTRO, Plaintiff,**

v.

**LOCAL 807 LABOR–MANAGEMENT PENSION FUND; Local 807 Labor–Management Health Fund; Joseph F. Mangan, John Hohmann, Joseph Votta, Mike Grilli, Stuart Oltchick, Harvey C. Lucks and Kenneth Biedermann, Defendants.**

**No. 89–CV–343.**

United States District Court, E.D. New York.

Jan. 29, 1991.

As Corrected Feb. 22, 1991.

---

**558**

Putney, Twombly, Hall & Hirson, New York City (Daniel Campbell, of counsel), for plaintiff.

O'Conner & Mangan, P.C., Long Island City, N.Y. (J. Warren Mangan, of counsel), for defendants.

### DECISION AND ORDER

BARTELS, District Judge.

The plaintiff, Pasquale Nastro ("Nastro"), filed this suit pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Nastro alleges, among other things, that the defendant Local 807 Health and Pension Funds ("Local 807 Pension Fund"),[1] under direction of the individually named defendants as trustees (the "trustees") (jointly the "defendants"), violated numerous sections of ERISA, to wit: the claims provision, 29 U.S.C. § 1133; the reporting and disclosure provision, 29 U.S.C. §§ 1024(b) and 1132(c); the suspension of benefits provision, 29 U.S.C. § 1133(1); the fiduciary responsibility provision, 29 U.S.C. § 1104(a)(1)(D); and the anti-interference provision, 29 U.S.C. § 1140. Plaintiff moves for summary judgment on the complaint.

### BACKGROUND

In March 1983, Nastro, age 43, applied for a Service Pension—Under Age 55 ("Service Pension") from Local 807's Pension Fund and was awarded the same effective April 1, 1983. In order to be eligible for a Service Pension Nastro had to have earned at least 25 years of pension credit with either Local 807's Pension Fund or the Pension Fund of Local 707, and completely withdraw from any employment in the industry he was employed in at the time of his retirement, to wit: the trucking industry.[2] Effective July 1, 1986, Nastro's Service Pension was suspended. The events surrounding the suspension of Nastro's benefits constitute the gravamen of this complaint.

Briefly, Nastro alleges that the defendants violated ERISA's provisions regarding the suspension of benefits because they suspended his Service Pension without any notice, laying aside written notice.[3] Nastro also maintains that the trustees violated

---

1. The Pension Fund is a jointly administered, labor-management, employee pension benefit plan and a pension plan within the meaning of § 3(2) of ERISA and § 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186. The Health Fund is a jointly administered, labor-management, employee welfare benefit plan and a welfare plan within the meaning of § 3(1) of ERISA and § 302 of LMRA, 29 U.S.C. § 186.

2. See Local 807 Labor–Management Pension Fund Rules and Regulations Sections 3.08 and 6.06(a).

3. Nastro also claims that this conduct violated Local 807's Pension Fund Rules and Regulations.

the fiduciary responsibility provisions of ERISA by failing to provide him written notice when they suspended his Service Pension. Beginning in 1988, Nastro's counsel, in an effort to ascertain why Nastro's benefits were suspended, made numerous and copious written requests for documents and information which, Nastro maintains, the defendants willfully refused to provide. This conduct, Nastro claims, constitutes a violation of the reporting and disclosure provisions of ERISA. Finally, Nastro maintains that the defendants have violated the anti-discrimination provision of ERISA by their refusal to fully and completely comply with his request for documents and information.

## DISCUSSION

It is well settled that summary judgment is appropriate only when it appears plain from the record that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lund's Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir. 1989). Furthermore, the court is required to resolve all ambiguities and doubtful inferences against the moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

On this motion for summary judgment the Court notes that much of the relevant factual background is sharply disputed.[4] Rather than review all the conflicting factual minutia contained in the voluminous exhibits submitted by both parties in connection with this motion the Court will address only those facts which are necessary to resolve the pending motion.

*Participant Status*

■ "Although [ERISA] has a broad remedial purpose, only participants [and] ben-

eficiaries[5] ... may avail themselves of its protection. 29 U.S.C. § 1332(a)." *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 473 (10th Cir.1990); *Brown v. Stenger,* No. 85–4073, 1988 WL 70603 (E.D.N.Y. May 25, 1988) (LEXIS, Genfed library, Dist file). As a threshold matter, therefore, the Court must determine if Nastro is a participant.

Under ERISA, "participant" means

any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be able to receive any such benefit.

29 U.S.C. § 1002(7). In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 957–958, 103 L.Ed.2d 80 (1989), the Supreme Court elaborated on the definition stating:

In our view, the term "participant" is naturally read to mean ... former employees ... who have "a colorable claim" to vested benefits. In order to establish that "he may become eligible" for benefits, a claimant must have a colorable claim that (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

Explicit in the Supreme Court's definition of "participant" is the requirement that the plaintiff prove either that his right to a retirement pension has vested or will vest. *See Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947, 952 (6th Cir.1990). Accordingly, the facts and circumstances surrounding Nastro's employment history, which are not undisputed, are critical to this Court's determination.

Nastro's employment history with respect to his eligibility for a Service Pension is a conundrum. Virtually all of the rele-

---

**4.** The Court makes this finding based upon its review of the Statements of Disputed and Undisputed Facts submitted by the parties pursuant to Rule 3(g) of the Civil Rules of the United States Courts for the Southern and Eastern Districts of New York as well as by all the Affidavits submitted in connection with this motion.

**5.** Nastro does not claim he is a beneficiary which is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

vant facts are disputed. Nastro contends that in 1983, he retired from the trucking industry with the requisite number of pension credits (8 and ¼ years of credit with Local 707's Pension Fund and 16 and ¾ years of credit with Local 807's Pension Fund). The defendants maintain that Nastro was awarded a Service Pension on the basis of false information contained in his application to the Local 807 Pension Fund. Specifically, they maintain that Nastro was ineligible to receive a Service Pension because (1) he did not have a combined total of 25 years of covered employment pursuant to a written bargaining agreement, and (2) as of April 1983, he had not ceased employment within the trucking industry.

The controversy is so fundamental that it begins with the date Nastro alleges he first became employed in the trucking industry and became a member of Teamster's Local 807. Nastro alleges that these events occurred in May 1958. The defendants, however, contend that Nastro began working in the trucking industry in 1959 and first joined the Teamster's in 1960, when he paid an initiation fee to Local 707. Accordingly, whereas Nastro maintains that his pension credits began to accrue in 1958, the defendants maintain that no contributions were made either to Local 707's Pension Fund or Local 807's Pension Fund until August 1960. This discrepancy of 2 and ¼ years, the defendants maintain, destroys Nastro's eligibility for a Service Pension.

There seems to be no dispute that from 1960 to 1968 Nastro's employer, P. Chimento Co., Inc., ("Chimento"), made contributions on his behalf to Local 707's Pension Fund. There also seems to be no dispute that during that time Nastro was engaged in covered employment as that term was defined in a collective bargaining agreement between Local 707 and Chimento.

In 1968, Nastro went to work for Regional Import & Export Trucking Co., Inc. ("Regional"), a concern owned by his father, which had a bargaining agreement with Local 807. Nastro held the title of Vice–President when he came on board in

1968, became President in 1972 and a majority shareholder in 1978. Nastro remained at Regional until April 1, 1983.

It is undisputed that Regional and Local 807 entered into a collective bargaining agreement in 1968. However, whereas Nastro maintains that since he became a member of Local 807 in 1958 he immediately resumed accruing pension credits with Local 807's Pension Fund when he joined Regional, the defendants maintain that Nastro first became a member of Local 807 on April 1, 1969,[6] when he transferred his membership from Local 707. Accordingly, the defendants dispute the pension credits Nastro claims from the time he started at Regional, sometime in 1968, until February 1969, when Regional made its first contribution to Local 807's Pension Fund on Nastro's behalf. Furthermore, Nastro maintains that all the contributions made by Regional to Local 807's Pension Fund, regardless of when the first payment was made, were made pursuant to a collective bargaining agreement between Regional and Local 807 and, accordingly, he is entitled to pension credits for all those years. Although the defendants admit that beginning in February 1969, and continuing through March 1983, Regional made contributions to Local 807's Pension Fund on Nastro's behalf, the defendants maintain that the contributions were not made pursuant to a collective bargaining agreement between the entities and, therefore, Nastro is ineligible for any pension credits for that period. In support of their position the defendants contend that the collective bargaining agreement between Regional and Local 807 limited employment for which pension credits could be earned to platform work and truck driving.[7] Furthermore, they contend that since Nastro admits that he did office work and did not either drive trucks or perform platform work while he was employed by Regional payments were not made pursuant to a collective bargaining agreement. The parties also dispute when the defendant's first learned that

6.  See Affidavit of Joseph Mangan dated April 5, 1990 ("Mangan Aff."), Exhibit A.

7.  See Mangan Aff.

Nastro was not engaged in either truck driving or platform work. While Nastro maintains that the trustees were aware of this fact in 1983 when they awarded him his pension, the defendants assert that they first learned the nature of Nastro's duties at Regional when they deposed him in June of 1989.

Also controverted is whether or not Nastro engaged in disqualifying employment—employment in the trucking industry, after April 1, 1983,—while he was collecting his Service Pension. On April 1, 1983, the day he retired from Regional Import & Export, Nastro began drawing a salary from Regional Transportation Co. Inc. ("Transportation"), a company that provides trucking services, but which did not have a collective bargaining agreement with Local 807 or any other labor organization.[8] The defendants maintain that Nastro's employment at Transportation was disqualifying in nature and, on the strength of this information, they suspended his benefits. Nastro, of course, maintains that he retired from the trucking industry in 1983 when he left Regional.

 In order to satisfy the Supreme Court's definition of participant as set forth in *Bruch*, the Court would have to find that Nastro's version of his employment history is true. If, however, the defendant's version of the facts is proven then Nastro does not have a "colorable claim [that] (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. at 957–958. It is patently obvious to the Court that each and every event between the years 1958 and 1983, inclusive, is crucial to Nastro's claim. Therefore, given the controversy as to (1) the date of Nastro's first employment in the trucking industry; (2) the date he applied for and became a contributing member to Local 807's Pension Fund; (3) the nature of his employment status at Regional between the years 1968 and 1983; and (4) the nature of his employment after

April 1, 1983,—the alleged date of retirement, the Court can not declare that Nastro is a participant as defined under ERISA. Nastro asks the Court to do something which it cannot, to wit: find in his favor disputed material facts in the context of a motion for summary judgment.

Furthermore, assuming, there was no factual dispute regarding Nastro's claim that he is a participant, virtually all of the other material facts with respect to his claim are also sharply disputed making summary judgment in his favor impossible.

## CONCLUSION

Pending a determination of the seminal question, to wit: whether the plaintiff is a participant as defined under ERISA, the Court lacks jurisdiction to consider his claims and his motion is denied.

SO ORDERED.

---

**8.** Nastro retained the title of President of Regional Import & Export, although he no longer drew a salary.