**Reed L. CHRISTENSEN, et al.**

v.

**CHESEBROUGH–POND'S, INC., Now Known as Conopco, Inc.**

**Civ. No. 5:92CV00727(AHN).**

United States District Court, D. Connecticut.

Aug. 31, 1994.

David S. Golub, Jonathan M. Levine, Silver, Golub & Teitell, Stamford, CT, for plaintiffs.

Scott R. Lucas, Gary A. MacMillan, Whitman & Ransom, Greenwich, CT, for defendant.

*RULING ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' RENEWED MOTION FOR LEAVE TO AMEND THE COMPLAINT*

NEVAS, District Judge.

Plaintiffs bring this action against Chesebrough–Pond's Inc. ("Chesebrough"),[1] pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a) and § 1132(e)(1). Plaintiffs allege that, as "participants" in Chesebrough's enhanced severance pay plan ("plan" or "severance plan"), they are eligible to receive such benefits.

Presently pending before the court are Chesebrough's motion to dismiss for lack of standing[2] and plaintiffs' renewed motion to amend the complaint. For the following reasons, Chesebrough's motion to dismiss for lack of standing [doc. # 17] is DENIED, and plaintiffs' renewed motion for leave to amend the complaint [doc. # 50] is GRANTED.

*STANDARD OF REVIEW*

The issue of standing implicates constitutional limitations on federal court jurisdiction. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). Indeed, standing is "a jurisdictional prerequisite to a federal court's deliberations." *Hodel v. Irving,* 481 U.S. 704, 711, 107 S.Ct. 2076, 2080, 95 L.Ed.2d 668 (1987). Parties seeking the exercise of federal jurisdiction have the burden "clearly to allege facts demonstrating that [they are] proper part[ies] to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975).

■ When considering whether a plaintiff has standing, the court must accept as true all material allegations in the complaint and construe the allegations in the complaining party's favor. *Id.* Determination of the existence of standing may require the court to go beyond the pleadings and consider other relevant evidence, in conjunction with the allegations in the complaint. *Id; Thompson v. County of Franklin,* 15 F.3d 245, 249 (2d Cir.1994).

*FACTS*

Mindful of the applicable standard of review, the court sets forth the following facts. The plaintiffs are former employees of Stauffer Chemical Company ("Stauffer"), a wholly owned subsidiary of Chesebrough.[3] (Def.Re-

---

1. Chesebrough is now known as Conopco, Inc.

2. Chesebrough captions its motion, "Motion to Dismiss for Lack of Subject Matter Jurisdiction." Although Chesebrough properly invokes Rule 12(b)(1), Fed.R.Civ.P., *Thompson v. County of Franklin,* 15 F.3d 245, 249 (2d Cir.1994), to so characterize this motion, which challenges plaintiffs' standing to sue, is technically inaccurate. The issue of standing, although of jurisdictional significance, is technically an issue of justiciability and is distinct from issues of subject matter

jurisdiction. *See, e.g. Baker v. Carr,* 369 U.S. 186, 198–208, 82 S.Ct. 691, 700–05, 7 L.Ed.2d 663 (1962) (distinguishing between lack of subject matter jurisdiction and lack of justiciability); *Can v. United States,* 14 F.3d 160, 162 n. 1 (2d Cir.1994) (same). For this reason, the court will refer to Chesebrough's motion as a motion to dismiss for lack of standing.

3. Stauffer was renamed the "Chemical Products Group" by Chesebrough.

ply, doc. # 54, Ex. B.) In 1986, soon after Chesebrough acquired Stauffer, Chesebrough extended its severance plan to cover Stauffer employees. (Levine Aff., doc. # 51, Ex. A.) Chesebrough's severance plan applied to salaried employees, including those who were directly employed by a subsidiary, such as Stauffer. The Chesebrough plan was entitled "Severance Plan Payment for Management Level Employees of Chesebrough–Pond's Inc. and its subsidiaries." (Levine Aff., Ex. E.) This plan identifies Chesebrough as the Plan Administrator. (Levine Aff., Ex. E.) In its 1987 Annual Return/Report filed with the Pension and Welfare Benefits Administration ("PWBA"), Chesebrough characterized its plan as a "[p]lan of controlled group of corporations or common control employers." (Levine Aff., Ex. C.)

Critical to the present case, is "Policy 9" of Chesebrough's severance plan, through which Chesebrough sought to reduce the possibility of a corporate takeover. Pursuant to Policy 9, salaried employees of Chesebrough and its subsidiaries would receive *double* severance if their employment was terminated for any reason, other than cause, within two years of a change in company ownership. (Levine Aff., Ex. B.)

On December 30, 1986, Unilever Corporation ("Unilever") acquired Chesebrough, thereby triggering the applicability of Policy 9. (Compl. at ¶ 14.) Employees terminated without cause between December 30, 1986 and December 30, 1988 were entitled to double severance pay. (Levine Aff., Ex. B.)

Each of the plaintiffs ceased employment with Stauffer after Unilever acquired Chesebrough and within the two-year period thereafter. (Compl. at ¶ 16.) Nevertheless, Chesebrough determined that the plaintiffs were not eligible to receive enhanced severance, because the plaintiffs received *notice* of termination before the December 30, 1986 takeover. (Compl. at ¶¶ 19, 20.) The plaintiffs brought this action against Chesebrough to challenge Chesebrough's interpretation of Policy 9—specifically, Chesebrough's determination that the date of notice was the

dispositive date with respect to severance eligibility.

## DISCUSSION

### I. Defendant's Motion to ·Dismiss for Lack of Standing

■ Chesebrough argues that the plaintiffs' complaint should be dismissed with prejudice for lack of standing because the plaintiffs have not sufficiently alleged that they were participants in an employee benefit plan administered by Chesebrough. The court disagrees.

Only participants and beneficiaries of employee benefit plans may bring a civil action to avail themselves of ERISA's remedies. 29 U.S.C. § 1132(a)(1). The central inquiry for the court is thus whether the plaintiffs are participants in Chesebrough's severance plan.[4] ERISA section 1002(7), defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." The United States Supreme·Court has interpreted this definition of "participant" to cover "former employees who ... have a 'colorable claim' to vested benefits." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (quoting *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)); *Saladino v. I.L.G.W.U. Nat'l Retirement Fund,* 754 F.2d 473, 476 (2d Cir.1985). A colorable claim is one that is arguable, not frivolous. *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991).

The crux of Chesebrough's argument is its contention that the plaintiffs lack standing because Stauffer, not Chesebrough, was their employer. Christensen points out that the complaint alleges that Chesebrough was the plaintiffs' employer and that they were participants in Chesebrough's severance pay policy. These allegations are fatally defective, Chesebrough argues, because the plaintiffs were actually employed by Stauffer, and thus

---

4. The court will not address the issue of whether the plaintiffs are beneficiaries. It is enough that

the plaintiffs fall within the definition of "participant."

cannot have been participants in Chesebrough's plan.[5] The Court disagrees with Chesebrough's contention, and finds both that Chesebrough was the plaintiffs' "employer" for purposes of ERISA, and that the plaintiffs have sufficiently alleged that they were participants in Chesebrough's employee benefit plan.

ERISA section 1002(5) defines "employer" as "any person acting directly as an employer, or *indirectly in the interest of an employer*, in relation to an employee benefit plan." 29 U.S.C. § 1002(5) (emphasis added). Construed in light of ERISA's broad remedial purpose, the definition of employer is necessarily sensitive to the increasing complexity of the corporate structure. *See Greenblatt v. Delta Plumbing & Heating Corp.*, 818 F.Supp. 623, 625–29 (S.D.N.Y.1993) (surety of employer qualified as an "employer" because surety acted in interest of employer in relation to employee benefit plan); *Nastro v. Local 807 Labor–Management Pension Fund*, 755 F.Supp. 557, 559 (E.D.N.Y.1991) (noting ERISA's broad remedial purpose); *see also Brokke v. Stauffer Chem. Co.*, 703 F.Supp. 215, 221 (D.Conn.1988) ("it is disingenuous to suggest that a corporate entity that obtains an ownership or proprietary interest in the quondam employer cannot properly be named as a defendant in the action").

The court finds that Chesebrough acted indirectly in the interest of Stauffer by providing a severance plan that covered Stauffer employees. 29 U.S.C. § 1002(5); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323–24 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993); *cf. Greenblatt*, 818 F.Supp. at 629. A review of the evidence in the record establishes that Chesebrough instituted a corporate-wide severance plan that, by its very terms, extended to the company's subsidiaries. (Levine Aff., Ex. E.) In describing the plan to participants and to the PWBA, Chesebrough consistently acknowledged that the severance plan applied to Stauffer employees. (Levine Aff., Ex. C and Ex. E.) In 1986, Chesebrough informed the PWBA that Stauffer's severance pay plan had "merged" with or been "consolidated" into the Chesebrough plan. (Levine Aff., Ex. D.) It follows that when the plaintiffs' employment with Stauffer ceased, the applicable severance plan was that provided for by Chesebrough.

The court finds that under the circumstances of this case, given the evidence in the record and the generous construction to be afforded ERISA's provisions, Chesebrough should not be insulated from a suit brought by Stauffer employees on the basis of an overly technical construction of "employer." The court is persuaded that Chesebrough acted in the interests of an employer in relation to the severance pay policy it both instituted and expressly extended to the plaintiffs. The plaintiffs, moreover, have a " 'colorable claim' to vested benefits" under Chesebrough's plan, and are therefore participants in that plan with standing to sue Chesebrough. *See Firestone*, 489 U.S. at 117, 109 S.Ct. at 957 (citation omitted).

Chesebrough also contends that the plaintiffs are not eligible for Chesebrough's severance benefits because they already received severance pay under an independent Stauffer plan. It is true that former employees who have received a lump sum benefit payment of *all* of their vested benefits are not eligible to receive future payments. *See, e.g., Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1535 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993). However, even assuming that the plaintiffs did receive benefits from Stauffer, there is no indication in the record that they received *all* of their vested benefits. The issue presented by this action is whether the plaintiffs are entitled to *enhanced* severance under Chesebrough's Policy 9; it is certainly conceivable that the plaintiffs are entitled to such enhanced severance payments *in addition* to any severance pay provided for by Stauffer. The plaintiffs' respective claims for vested benefits, therefore, are at least "colorable."

---

**5.** Chesebrough indicated at oral argument on July 5, 1993, that it would not have contested the plaintiffs' standing if the complaint had alleged that the plaintiffs participated in a plan *administered* by Chesebrough. (*See also* Def. Reply at 2.)

In other words, Chesebrough's position is that the plaintiffs lack standing because they sued Chesebrough in its capacity as their employer, rather than as plan administrator, and Chesebrough was not, in fact, their employer.

After a review of the entire record, the court concludes that Chesebrough acted indirectly in the interest of Stauffer to create a severance pay plan in which the plaintiffs were participants. Hence, the plaintiffs, although directly employed by Stauffer, have standing to sue Chesebrough.

## II. *Plaintiffs' Renewed Motion for Leave to Amend Complaint*

On March 30, 1993, plaintiffs filed a motion to amend the complaint. Through the proposed Amended Complaint the plaintiffs sought to clarify that their respective claims did not depend on direct employment with Chesebrough but rather on their participation in Chesebrough's severance plan. Chesebrough opposed the motion, arguing that the plaintiffs could not amend the complaint to manufacture standing to sue Chesebrough. On November 24, 1993, the court denied the motion to amend without prejudice to renewal. Now pending before the court is plaintiffs' renewed motion for leave to amend the complaint [doc. # 50].

As noted, the complaint and supporting documentation establish that the plaintiffs have standing to sue Chesebrough. The plaintiffs, therefore, have no reason to manufacture standing by way of an amended complaint. Moreover, Chesebrough has previously indicated that if the plaintiffs prevail on the issue of standing, it would not oppose the plaintiffs' motion for leave to amend. (*See* Pl. Brief, doc. # 50, at 2 n. 1.) The court will therefore permit the plaintiffs to amend their complaint.

## CONCLUSION

For the reasons set forth herein, Chesebrough's motion to dismiss for lack of standing [doc. # 17] is DENIED and the plaintiffs' renewed motion for leave to amend the complaint [doc. # 50] is GRANTED.

It is FURTHER ORDERED that this action, Civil No. 5:92CV00727(AHN) is consolidated with 3:93CV00676(AHN) and 3:93CV00685(AHN) under the master docket number 5:92CV00727(AHN). *See* Rule 42(a), Fed.R.Civ.P. All future filings in this action shall be filed only in the master docket, 5:92CV00727(AHN). *See* Local Rule 10(f).

It is FURTHER ORDERED that the plaintiffs shall file an amended complaint, reflecting the changes proposed in the proposed amended complaint dated March 30, 1993 as well as the consolidation of the three actions. (*See* Pl. Brief at 23 n. 15 (suggesting that "a single complaint be filed to cover all three actions").)

SO ORDERED.