[No. 59765-5-I. Division One. April 7, 2008.]

CHEE CHEW, *Appellant*, v. ROBERT LORD ET AL., *Respondents.*

*Shellie McGaughey* and *Dan'L W. Bridges* (of *McGaughey Bridges Dunlap, PLLC*), for appellant.

*Karen R. Bertram, Kenneth L. Schubert III*, and *Donald B. Scaramastra* (of *Garvey Schubert & Barer*), for respondents.

¶1 Dwyer, A.C.J. — Robert Lord, a Washington resident, was severely injured in Nevada when he fell down the shaft of an abandoned mine while participating in an adult scavenger hunt called "Shelby Logan's Run" (Game). Lord and his wife, Jacqueline Deerr-Lord (collectively Lord), sued for damages in a Nevada state court. The named defendants were the corporate owner of the mine, its president, and the six people, including Chee Chew, who staged the Game. Two days after losing a motion for summary judgment in the Nevada action, Chew brought this action against Lord in King County Superior Court, alleging breach of contract,

requesting an award of damages, and seeking a declaratory judgment that Lord had a duty to defend Chew in the Nevada action based on a "WAIVER OF LIABILITY AND ASSUMPTION OF RISK" form (waiver) signed by Robert Lord prior to his participation in the Game.[1]

¶2 The superior court granted Lord's motion for summary judgment, dismissing Chew's claims on the basis that they were compulsory counterclaims that were required to be asserted in the Nevada action. We affirm.

I

¶3 On June 1, 2004, Lord filed suit in a Nevada state court. On October 4, 2004, Chew filed his answer and asserted several affirmative defenses, including a contention that the waiver signed by Lord released Chew of all liability. Chew did not assert in his answer that the Nevada court lacked subject matter jurisdiction based on a forum-selection clause in the waiver. Chew also did not assert any counterclaims against Lord. However, Chew did assert cross claims against the mine's corporate owner and its president, seeking indemnification and contribution. In return, the mine's owner asserted similar cross claims against Chew.

¶4 In January 2006, Lord's counsel received a letter from Chew's counsel asserting that the waiver contained an "indemnification and hold harmless clause that unquestionably requires your client to defend and hold harmless Mr. Chew from any and all litigation and claims arising from your client's participation in the activity." The letter also asserted that "we are tendering to you the defense of Mr. Chew and specifically requesting that you indemnify Mr. Chew as it relates to the claims asserted against him" in the Nevada action. The parties dispute whether Lord refused

---

[1] Although the form allegedly also bears the signature of Jacqueline Deerr-Lord as a witness, Robert Lord conceded in a deposition that he actually signed his wife's name on the form. Chew acknowledged, in pleadings filed in this action, that Jacqueline Deerr-Lord is not a party to the contract.

Chew's tender of defense or whether Lord requested clarification of the demand and more time to respond.

¶5 Subsequently, Chew filed a motion for summary judgment, seeking dismissal of the Nevada action and contending both that the waiver signed by Lord released Chew of any liability and that Washington law controlled the validity of the waiver because of a choice-of-law provision in the document. Chew also filed another motion to dismiss on the basis of forum non conveniens or, in the alternative, a motion for choice-of-law determination. The Nevada court denied all of Chew's motions on March 21, 2006.

¶6 Two days later, Chew commenced this action against Lord in King County. Chew claimed that Lord materially breached the indemnification provision in the waiver by failing to make assurances that he would indemnify Chew for monies spent defending the Nevada action and for any monies Chew was required to pay as the result of any judgment against him entered in that case. Chew requested a declaratory judgment determining the rights and liabilities of the parties pursuant to the waiver signed by Lord. Specifically, Chew's complaint prayed for the following relief:

> 4.1 For declaratory judgment determining the rights and liabilities of the parties herein under the [waiver signed by Lord], and declaring that the defendants owe the plaintiff a duty to defend and hold him harmless from the [Nevada action] as well as a determination that defendants owe the plaintiff the obligation to reimburse him for his actual attorney's fees, expert fees, and all other costs incurred to date and in the future in the defense of that lawsuit.

> 4.2 For a money judgment against the defendants, jointly and severally, for plaintiff's actual attorney's fees, expert fees, and all other costs incurred to date and in the future in the defense of the [Nevada lawsuit].

> 4.3 For the plaintiff's attorney's fees, costs, and disbursements upon the filing of this lawsuit.

¶7 In his complaint, Chew reiterated the details of the Nevada action. Attached as an exhibit to the complaint was

a copy of the Nevada complaint. Subsequently, Chew moved for summary judgment, seeking declaratory relief and specific performance.[2] Lord also moved for summary judgment. The trial court granted Lord's motion, dismissing Chew's claims on the basis that they constituted compulsory counterclaims that were required to be brought in the Nevada action. The trial court did not reach other issues in its ruling. Chew appeals.

## II

¶8 Chew contends that the trial court erred by categorizing the claims brought in this action as compulsory counterclaims required to be asserted in the Nevada litigation. This is so, Chew argues, because his indemnity claim against Lord would not have accrued until after the Nevada action was finally resolved. Thus, he contends, because he could have waited until after the Nevada action was concluded to file suit against Lord on his indemnification claims, Chew's Washington claims were not properly determined to be compulsory counterclaims. We disagree. All of Chew's claims in this action were based on an interpreta-

---

[2] In his motion, Chew specifically requested the trial court to declare that

1. The contract at issue is a valid and enforceable contract, and as a subset of that finding, that: (a) the contract is not void for public policy; and (b) no punitive damages are available against Mr. Chee Chew as the contract indicates that the law of the State of Washington shall apply to any dispute and Washington does not recognize punitive damages;

2. That the contract at issue releases Mr. Chew from all liability to Mr. Lord arising out of his participation in the activity set forth in the contract with the exception of any conduct that is found to constitute gross negligence.

3. Defendant Robert Lord breached the contract by failing to provide Mr. Chew a defense in accordance with the plain contract terms, and that he owes him that duty of defense without regard to other provisions of the contract;

4. Mr. Lord breached the contract by suing Mr. Chee Chew in Nevada.

Chew also requested

5. an order compelling specific performance by Mr. Lord on the contract, specifically, (1) ordering Mr. Lord to non-suit any claim against Mr. Chew that is not available under Washington law and specifically his claim for punitive damages; (2) ordering Mr. Lord to defend Mr. Chew by payment of Mr. Chew's incurred defense costs to date, and into the future through trial and any applicable appeal.

tion of a contractual provision in the waiver and were mature claims at the time Chew filed his answer in the Nevada action. Thus, they were compulsory counterclaims therewith.

¶9 "We engage in a de novo review of a ruling granting summary judgment. *Anderson v. Weslo, Inc.*, 79 Wn. App. 829, 833, 906 P.2d 336 (1995). Thus, we engage in the same inquiry as the trial court." *Green v. Normandy Park Riviera Section Cmty. Club, Inc.*, 137 Wn. App. 665, 681, 151 P.3d 1038 (2007), *review denied*, 163 Wn.2d 1003 (2008).

¶10 Washington, Nevada, and the federal courts share an identical compulsory counterclaim rule:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Civil Rule (CR) 13(a); Fed. R. Civ. P. 13(a); Nev. R. Civ. P. 13(a). The purpose of the rule " 'is to make an "actor" of the defendant so that circuity of action is discouraged and the speedy settlement of all controversies between the parties can be accomplished in one action.' " *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 842-43, 963 P.2d 465 (1998) (quoting *Great W. Land & Cattle Corp. v. Sixth Judicial Dist. Court*, 86 Nev. 282, 285, 467 P.2d 1019 (1970)). "The considerations behind compulsory counterclaims include judicial economy, fairness and convenience." *Schoeman v. N.Y. Life Ins. Co.*, 106 Wn.2d 855, 866, 726 P.2d 1 (1986).

¶11 In determining what constitutes a "transaction or occurrence," Washington courts, Nevada courts, and federal courts consider whether the claim and counterclaim are logically related. *Schoeman*, 106 Wn.2d at 865-66 (quoting *Rosenthal v. Fowler*, 12 F.R.D. 388, 391 (S.D.N.Y. 1952)); *MacDonald v. Krause*, 77 Nev. 312, 320, 362 P.2d 724 (1961).

■■ ¶12 Generally, a party's failure to plead a compulsory counterclaim will prevent that party from subsequently bringing a separate action on that claim. *Schoeman*, 106 Wn.2d at 867; *Krikava v. Webber*, 43 Wn. App. 217, 219-20, 716 P.2d 916 (1986); *Executive Mgmt.*, 114 Nev. at 842-43 (citing *MacDonald*, 77 Nev. 312). The fact that the original action took place in one jurisdiction and the subsequent action is in another jurisdiction does not render inapplicable compulsory counterclaim concerns. *See Schoeman*, 106 Wn.2d at 867. Furthermore, the fact that a claim is for a declaratory judgment also does not render inapplicable compulsory counterclaim concerns.

> Whenever an actual controversy exists between the parties and the circumstances indicate that declaratory relief may be an appropriate method for the settlement of the conflict, a counter-claim or a cross-claim for a declaratory judgment will be permitted. Indeed, this procedure often may be an efficient way to adjudicate all of the controversies between the parties in one proceeding. A counterclaim or a cross-claim seeking declaratory relief, like any other counterclaim or cross-claim is subject to the provisions of Rule 13. . . . Consequently, if a counterclaim for declaratory relief arises out of the same transaction or occurrence as plaintiff's claim, it is compulsory and Rule 13(a) applies.

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1406, at 31-32 (2d ed. 1990) (footnote omitted).

■ ¶13 One exception to the compulsory counterclaim requirement is when the counterclaim has not matured at the time the proponent of the claim serves pleadings. 6 Wright, Miller & Kane, *supra*, § 1411, at 80.

> This [exception] is derived from the language in the rule limiting its application to claims the pleader has "*at the time of serving the pleading.*" A counterclaim acquired by defendant *after* he has answered will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim. . . .
>
> This exception to the compulsory counterclaim requirement necessarily encompasses a claim that depends upon the out-

come of some *other* lawsuit and thus does not come into existence until the action upon which it is based has terminated. . . . However, *a counterclaim will not be denied treatment as a compulsory counterclaim solely because recovery on it depends on the outcome of the main action. This approach seems sound when the counterclaim is based on pre-action events and only the right to relief depends upon the outcome of the main action.*

6 WRIGHT ET AL., *supra*, § 1411, at 81-84 (emphasis added) (footnotes omitted).

 ¶14 Here, a logical relationship exists between the claims asserted by Chew in Washington and the claims asserted by Lord in Nevada. Chew does not dispute that his claims arose out of the transaction or occurrence that was the subject matter of Lord's claims in Nevada. Instead, Chew relies on *Parkridge Associates, Ltd. v. Ledcor Industries, Inc.*, 113 Wn. App. 592, 604-05, 54 P.3d 225 (2002), for his contention that his claims here were not compulsory counterclaims in the Nevada action solely because Chew's liability, if any, would not accrue until after the final resolution of the Nevada action.

¶15 However, *Parkridge* is readily distinguishable. First, the issues in *Parkridge* concerned the application of a statute of repose and whether it barred recovery for indemnification in a third party action. *Parkridge*, 113 Wn. App. at 595. *Parkridge* did not concern the issue of compulsory counterclaims as between parties to the main action. Second, although the contract in question therein included a duty-to-defend provision, the *Parkridge* court focused on the duty-to-indemnify claim and declined to discuss Ledcor's duty to defend claim because it was not argued on appeal, noting that "the duty to defend and the duty to indemnify do not necessarily accrue together." *Parkridge*, 113 Wn. App. at 604.

¶16 Here, Chew claims that by signing the waiver, Lord agreed to defend and indemnify Chew in the Nevada action. Chew also claims that "Lord breached the contract by suing

Mr. Chee Chew in Nevada." If Chew's claims are true, they were mature at the time Chew served his answer in the Nevada action. At that time, he had already incurred legal costs associated with defending the Nevada action. Thus, a declaratory judgment regarding these issues in the Nevada court may have settled that action and would have been an efficient way to adjudicate all of the controversies between the parties in one proceeding.

¶17 Furthermore, a judicial declaration that the waiver created a promise that Lord would indemnify Chew against any judgment entered in the Nevada action did not depend on the outcome of the Nevada action. Such a declaratory claim will not be denied treatment as a compulsory counterclaim solely because recovery on a judgment depends on the outcome of the main action.

¶18 All of Chew's claims depend on the interpretation of a contractual provision in the waiver and do not depend upon the outcome of the underlying action. In fact, in his response to Lord's summary judgment motion requesting dismissal, Chew acknowledged that "[t]he only 'facts' necessary to determine Mr. Chew's Washington complaint are the Nevada complaint and the contract. Indemnification and defense duties are decided on the basis of the allegations their selves, not their ultimate merit."

¶19 The purpose of the compulsory counterclaim rule is served by making an "actor" of Chew so that circuity of action is discouraged and the speedy settlement of all controversies between Chew and Lord can be accomplished in one action. We hold that the trial court properly dismissed Chew's claims because they were compulsory counterclaims that were required to be asserted in the Nevada action.

### III

¶20 Chew next contends that even if his claims are considered compulsory counterclaims, he was not re-

quired to file them as such because a forum selection clause in the waiver signed by Lord, designating Washington courts the proper venue, effectively waived Chew's requirement to do so. Lord counters that Chew is basing his contention on a forum selection clause that does not exist.[3] We agree.

¶21 Only two sentences in the waiver mention Washington:

> I understand and agree that this waiver of liability and assumption of risk shall be governed by and construed in accordance with the internal laws of the State of Washington, and that it is intended to be as broad and inclusive as permitted under such laws. If any portion of it is held to be invalid, I agree that the remaining terms shall continue to be in full legal force and effect. I further agree and consent to personal jurisdiction in the courts of the State of Washington.

The first reference to Washington is a choice-of-law provision. The second reference to Washington concerns exactly what it states—a consent to personal jurisdiction in Washington courts.

¶22 Chew's reliance on *Kysar v. Lambert*, 76 Wn. App. 470, 887 P.2d 431 (1995), is inapposite. In *Kysar*, the parties' agreement contained a forum selection clause:

> "The terms and conditions of the order documents applicable to this transaction shall be interpreted under the case and statutory law of the State of Washington. In the event any action is

---

[3] Citing to *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990), Lord also asks this court to consider extrinsic evidence (the fact that Chew did not contend Nevada was an improper venue despite unsuccessfully arguing that Washington law applied to the Nevada action) to conclude that the contract did not have a forum selection clause. However, our Supreme Court clarified the holding in *Berg* because it was viewed by some as authorizing unrestricted use of extrinsic evidence in contract analysis. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 500, 115 P.3d 262 (2005). Instead, "extrinsic evidence is relevant only to determine the meaning of specific words and terms used, not to show an intention independent of the instrument or to vary, contradict, or modify the written word." *Oliver v. Flow Int'l Corp.*, 137 Wn. App. 655, 660, 155 P.3d 140 (2006) (citing *Hearst*, 154 Wn.2d at 503). Thus, we do not consider Chew's action or lack of action, independent of the language of the instrument, to demonstrate his intent.

brought to enforce such terms and conditions, venue shall lie exclusively in Clark County, Washington."

*Kysar*, 76 Wn. App. at 487. On appeal, the court held that the agreement contained consent to personal jurisdiction. *Kysar*, 76 Wn. App. at 487. The court reasoned that "the only way in which venue could 'lie exclusively in Clark County' was if the parties were intending to consent to personal jurisdiction in Washington." *Kysar*, 76 Wn. App. at 487. However, as Lord correctly notes, *Kysar* does not stand for the reverse proposition, which is the position advocated by Chew.

¶23 Consenting to personal jurisdiction in Washington courts is not the same as agreeing that Washington courts are the only venue in which a claim may be brought. The language in the contract signed by Lord merely provides that, should suit be brought in a Washington court, Lord consents to personal jurisdiction. The contract does not provide that Washington courts are the only forum in which an action may be brought.[4]

¶24 Chew next cites to *Haberman v. Washington Public Power Supply System*, 109 Wn.2d 107, 744 P.2d 1032, 750 P.2d 254 (1987), for the proposition that the choice of venue will be enforced as to the contract claims themselves. But the issue in *Haberman* was not choice of venue. Rather, the issue was whether The Securities Act of Washington (ch. 21.20 RCW) "applies in an action brought in a Washington forum where out-of-state parties are under this State's jurisdiction." *Haberman*, 109 Wn.2d at 134. The *Haberman* decision is inapplicable to a resolution of this dispute.

¶25 Because the contract signed by Lord did not contain a forum selection clause, we need not further consider

---

[4] Chew also cites to *Voicelink Data Services, Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 937 P.2d 1158 (1997), for the unremarkable proposition that forum selection clauses are enforceable. That holding in no way alters our analysis.

Chew's assertion that the forum selection clause constituted a waiver of the compulsory counterclaim requirements.[5]

¶26 Affirmed.

ELLINGTON AND APPELWICK , JJ., concur.

---

[5] We decline to award attorney fees to either party in conjunction with this appeal.