[No. 40667-5-II.   Division Two.   October 25, 2011.]

DENNIS LANE ET AL., *Respondents*, v. SKAMANIA COUNTY, *Defendant*, LAWRENCE L'HOMMEDIEU ET AL., *Appellants*.

492

*Lawrence L'Hommedieu*, pro se.

*Joseph Vance* (of *Miller Nash LLP*), for respondents.

¶1 VAN DEREN, J. — Lawrence and Shelane L'Hommedieu[1] appeal pro se from the trial court's denial of their CR 13(e) motion to supplement their pleadings. In January 2010, after trial, and after we issued a mandate terminating review of the underlying 2003 land use petition act (LUPA)[2] case, the L'Hommedieus moved to add a counterclaim to that case alleging that Dennis and Elizabeth Lane wrongfully filed a lis pendens on the L'Hommedieus' property in 2006. The

---

[1] Shelane L'Hommedieu is the Jane Doe L'Hommedieu referred to in above-entitled action.

[2] Chapter 36.70C RCW.

L'Hommedieus argue that the trial court abused its discretion in denying their motion to file a counterclaim in the 2003 case because (1) it erred in applying CR 13(f) instead of CR 13(e) to their after-arising counterclaim and (2) their counterclaim did not mature under CR 13(e) until they prevailed in the 2003 action in which the lis pendens was filed.[3] We agree that CR 13(e) applied to the L'Hommedieus' counterclaim but we hold that the trial court did not abuse its discretion in denying their motion in 2010 to assert a counterclaim relating to the lis pendens filed in 2006, more than three years after the counterclaim matured, more than three years after the 2007 trial, and after our mandate issued on the second appeal in 2010. Therefore, we affirm.

## FACTS

¶2 On March 26, 2003, the Lanes petitioned for review under LUPA, seeking, in part, to enforce a restrictive covenant and to permanently enjoin the L'Hommedieus from installing an additional septic system while constructing a second house on their property.[4] On June 10, the trial court granted a temporary restraining order enjoining the L'Hommedieus' installation of the septic system. The trial court entered a preliminary injunction enjoining further work on the septic system on June 26. The L'Hommedieus filed an answer to the Lanes' action on July 23. The trial court granted partial summary judgment in favor of the L'Hommedieus on the restrictive covenant issue, ruling that no material issues of fact existed and that the covenant was not enforceable against them and quashing its preliminary injunction.

---

[3] The L'Hommedieus' arguments on appeal conflate the issues of the trial court's denial of leave to supplement their pleadings with the merits of their attempted counterclaim. Because the trial court denied leave to supplement their pleadings, the merits of their counterclaim are not before us and we do not consider these arguments.

[4] On July 2, 2003, the Lanes amended their pleadings to clarify the restrictive covenant claim.

¶3 The Lanes appealed the trial court's decision granting partial summary judgment to the L'Hommedieus and quashing the preliminary injunction and, in our unpublished 2005 opinion, we reversed and remanded to the trial court because material issues of fact existed. *Lane v. Skamania County*, noted at 128 Wn. App. 1063, 2005 WL 1847180, at *8, 2005 Wash. App. LEXIS 1938, at *22. After remand, on June 14, 2006, the Lanes filed a lis pendens against the L'Hommedieus' property. At a bench trial, the L'Hommedieus argued that they were entitled to damages and attorney fees because the Lanes wrongfully enjoined the installation of the septic system. But they did not claim that they were entitled to damages or attorney fees based on a wrongfully filed lis pendens.

¶4 After a bench trial concluded on February 28, 2007, the trial court generally made factual findings mitigating enforcement of the covenant against the L'Hommedieus. It also found that the Lanes had not brought their suit in "bad faith" and that the L'Hommedieus had not suffered "substantial damages" from the preliminary injunction. Clerk's Papers (CP) at 370. It concluded that the covenant did not apply to the L'Hommedieus' property and septic system and denied the Lanes' request for a permanent injunction. But it also concluded that the Lanes wrongfully enjoined the L'Hommedieus and awarded the L'Hommedieus' attorney fees "incurred in quashing the preliminary injunction." CP at 371. It entered judgment on May 31, 2007.

¶5 In the second appeal to this court, we affirmed the trial court's conclusion that the covenant did not apply to the L'Hommedieus, but we reversed the award of attorney fees arising from quashing the preliminary injunction, holding that the trial court could not award attorney fees when it found the Lanes did not act in bad faith. *Lane v. Skamania County*, noted at 149 Wn. App. 1017, 2009 WL 597283, at *3-4, 2009 Wash. App. LEXIS 558, at *9.

¶6 We issued a mandate in the second appeal on January 12, 2010. On January 21, the L'Hommedieus moved in the

trial court under CR 13(e) to supplement their pleadings to assert a counterclaim alleging that (1) in June 2006, they had listed their home for sale with a real estate agent; (2) under Washington law, an action seeking to enforce a covenant is not an action affecting title to real property; (3) they were entitled to damages arising from the Lanes' wrongful filing of a lis pendens against their property in 2006;[5] and (4) under the lis pendens statute, RCW 4.28-.328(3), their counterclaim did not mature until they obtained a judgment in their favor and we mandated the case following the second appeal.

¶7 In denying the L'Hommedieus' motion, the trial court orally ruled that the L'Hommedieus' motion arose under CR 13(f) and that they failed to demonstrate "any oversight, inadvertence, or excusable neglect" in failing to file their counterclaim "as soon as the lis pendens was filed [or] shortly thereafter." Report of Proceedings at 15. The L'Hommedieus unsuccessfully moved for reconsideration. They now appeal.

## ANALYSIS

¶8 The L'Hommedieus argue that the trial court erred in relying on CR 13(f) to deny leave to plead their lis pendens counterclaim because their counterclaim arose after they filed their answer and, thus, CR 13(e) applied. The Lanes contend that the trial court correctly denied leave to assert the counterclaim under either rule. We agree that the trial court did not abuse its discretion in denying the L'Hommedieus motion to amend their pleadings.

### I. CR 13(e) AND CR 13(f)

¶9 We review the trial court's grant or denial of leave to amend or supplement the pleadings for abuse of discretion. *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316

---

[5] According to the L'Hommedieus' motion, the Lanes released the lis pendens on December 14, 2009.

(1999); *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 169, 736 P.2d 249 (1987). "A trial court abuses its discretion when its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.' " *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010) (quoting *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

¶10 We review the interpretation of court rules, a matter of law, de novo. *Burt v. Dep't of Corr.*, 168 Wn.2d 828, 832, 231 P.3d 191 (2010). We apply the same principles when interpreting court rules that we apply when we interpret statutes. *State v. Carson*, 128 Wn.2d 805, 812, 912 P.2d 1016 (1996). When words in a court rule are plain and unambiguous, further statutory construction is not necessary and we apply the court rule as written. *State v. Robinson*, 153 Wn.2d 689, 693, 107 P.3d 90 (2005).

¶11 CR 13(e) provides:

> Counterclaim Maturing or Acquired After Pleading. A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.

(Boldface omitted.) CR 13(f) provides:

> Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.

(Boldface omitted.)

¶12 The L'Hommedieus based their counterclaim on the lis pendens filed by the Lanes. The L'Hommedieus filed their answer to the Lanes' LUPA lawsuit on July 23, 2003. The Lanes filed the lis pendens on June 14, 2006. Under CR 13(f)'s plain language, the L'Hommedieus could not have "[o]mitted" from their answer a counterclaim arising from events occurring after their answer's filing. Likewise, because the L'Hommedieus filed their answer before the Lanes filed the lis pendens, the L'Hommedieus' counter-

claim "matured or was acquired" after they filed their answer. Thus, CR 13(e) applied by its plain language. We hold that the trial court erred in applying CR 13(f) to their motion. ·

## II. UNTIMELY CR 13(e) MOTION

¶13 But an appellate court may affirm a trial court's correct result on any grounds established by the pleadings and supported by the record. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989). The L'Hommedieus argue that they timely moved to supplement their pleadings because, reading CR 13(e) and RCW 4.28.328(3) together, their lis pendens counterclaim did not mature until they became the prevailing party in the Lanes' action. We disagree.

### A. Claim Maturation under CR 13(e)

¶14 We review questions of statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9. If a statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). We discern plain meaning not only from the provision in question but also from closely related statutes and the underlying legislative purposes. *Murphy*, 151 Wn.2d at 242.

¶15 RCW 4.28.328(3), upon which the L'Hommedieus rely as a basis for their counterclaim, provides:

> Unless the [party who files a lis pendens] establishes a substantial justification for filing the lis pendens, [that party] is liable to an aggrieved party who prevails in defense of the action in which the lis pendens was filed for actual damages caused by filing the lis pendens, and in the court's discretion,

reasonable attorneys' fees and costs incurred in defending the action.

But the statute does not govern when a counterclaim under RCW 4.28.328(3) must be filed.

¶16 CR 13 sets forth the rules for asserting counterclaims. Washington cases discussing CR 13(e) are sparse, and interpretation of when a counterclaim matures under CR 13(e) is an issue of first impression in this state. But Division One of this court has discussed when a claim has "matured" under CR 13(a), which governs compulsory counterclaims. *Chee Chew v. Lord*, 143 Wn. App. 807, 814-16, 181 P.3d 25 (2008). In *Chew*, Lord sued Chew and the corporate owner of an abandoned mine in Nevada for injuries sustained during an adult scavenger hunt that Chew had organized in the mine. 143 Wn. App. at 809. Chew and the mine's corporate owner asserted cross claims against each other. *Chew*, 143 Wn. App. at 810. After losing a summary judgment motion in the Nevada action, Chew filed suit in Washington against Lord, claiming Lord breached the indemnification clause in the waiver Lord had signed before the scavenger hunt began. *Chew*, 143 Wn. App. at 811. Specifically, Chew sought a judgment declaring that the waiver required Lord to hold him harmless for claims arising from the scavenger hunt and to indemnify him for any money spent and any judgment entered against him in defending the Nevada action. *Chew*, 143 Wn. App. at 811. The Washington trial court dismissed Chew's claims as compulsory counterclaims that he should have brought in the Nevada action. *Chew*, 143 Wn. App. at 812.

¶17 On appeal, Chew argued that his indemnity claim against Lord would not have matured until after the Nevada action's final resolution and, thus, was not a compulsory counterclaim. *Chew*, 143 Wn. App. at 812, 815-16. Division One disagreed. *Chew*, 143 Wn. App. at 812-13. It observed that "[o]ne exception to the compulsory counterclaim requirement is when the counterclaim has not

matured" at the time the claim's proponent serves pleadings. *Chew*, 143 Wn. App. at 814. But, it also observed:

> "This exception to the compulsory counterclaim requirement necessarily encompasses a claim that depends upon the outcome of some *other* lawsuit and thus does not come into existence until the action upon which it is based has terminated. . . . However, *a counterclaim will not be denied treatment as a compulsory counterclaim solely because recovery on it depends on the outcome of the main action. This approach seems sound when the counterclaim is based on pre-action events and only the right to relief depends upon the outcome of the main action.*"

*Chew*, 143 Wn. App. at 814-15 (alteration in original) (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1411, at 81-84 (2d ed. 1990)). It reasoned that Chew's indemnification claims against Lord were mature when Chew served his answer in the Nevada action because, "[a]t that time, [Chew] had already incurred legal costs associated with defending the Nevada action." *Chew*, 143 Wn. App. at 816. It further reasoned:

> [A] judicial declaration that the waiver created a promise that Lord would indemnify Chew against any judgment entered in the Nevada action did not depend on the outcome of the Nevada action. Such a declaratory claim will not be denied treatment as a compulsory counterclaim solely because recovery on a judgment depends on the outcome of the main action.

*Chew*, 143 Wn. App. at 816. Thus, it held that the trial court properly dismissed Chew's claims as mature compulsory counterclaims that he should have pleaded in his answer in the Nevada action. *Chew*, 143 Wn. App. at 816.

¶18 The relevant inquiry under both CR 13(a) and CR 13(e) is whether the later-asserted counterclaim matured before or after the answer was filed. Thus, *Chew*'s CR 13(a) maturation analysis is helpful when analyzing a later-filed claim under CR 13(e). Further, we may look to federal cases

interpreting Federal Rule of Civil Procedure (FRCP) 13(e) as persuasive authority because it is substantially similar to Washington's CR 13(e).[6] *See Am. Disc. Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 37, 499 P.2d 869 (1972); *Luckett v. Boeing Co.*, 98 Wn. App. 307, 311-12, 989 P.2d 1144 (1999); *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 371-72, 777 P.2d 1056 (1989). *Chew*'s maturation analysis comports with the analysis of counterclaim maturation under FRCP 13(e):

> [FRCP] 13(e) also contains a prerequisite not found in [FRCP] 15(d) to the effect that the counterclaim must have been acquired or have "matured" before it can be pleaded with the court's permission. For example, in [*Union National Bank of Youngstown, Ohio v. Universal-Cyclops Steel Corp.*, 103 F. Supp. 719 (W.D. Pa. 1952)], plaintiff sought an injunction against defendant for patent infringement and damages. Defendant then attempted to assert a counterclaim for the wrongful bringing of the action. The court concluded that it could not be interposed because even though defendant's claim certainly arose after service of the answer, it would not arise prior to the final determination of plaintiff's claim and therefore was not yet mature. This result is not inevitable. *Arguably, the court's construction of the rule is unduly restrictive inasmuch as the claim being asserted came into existence at the time the original action was instituted and it is only the question of damages or the existence of defenses to the counterclaim that may have to await the adjudication of the main claim.*

6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1428, at 244-45 (3d ed. 2010) (emphasis added) (footnotes omitted).

¶19 The L'Hommedieus correctly observe that RCW 4.28.328(3) entitles only an "aggrieved party who prevails

---

[6] FRCP 13(e) provides:

Counterclaim Maturing or Acquired After Pleading. The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.

(Boldface omitted.)

in defense of the action in which the lis pendens was filed" to actual damages and reasonable attorney fees and costs. But the L'Hommedieus based their counterclaim on the Lanes' lis pendens filing after the L'Hommedieus listed their home for sale. Any damages they incurred from the lis pendens began accruing when the Lanes filed it. Likewise, the L'Hommedieus had already incurred costs and attorney fees in defending "the action in which the lis pendens was filed," i.e., the Lanes' action to enforce the covenant against the L'Hommedieus, long before they moved to assert their counterclaim. RCW 4.28.328(3). Finally, the L'Hommedieus claimed in part that the Lanes lacked substantial justification for filing the lis pendens because under Washington law an action to enforce a covenant is not an action affecting title to real property. If the L'Hommedieus' claims were true, they were true when the Lanes filed the lis pendens in 2006.

¶20 The bases of the L'Hommedieus' counterclaim came into existence in 2006 (or shortly thereafter), when the Lanes filed the lis pendens and were not dependent on the outcome of the main action tried after remand from this court in 2005. As in *Chew*, only the L'Hommedieus' right to recover on their counterclaim, i.e., their status as the prevailing party, awaited the main action's outcome. Thus, the L'Hommedieus' counterclaim matured in 2006 when the Lanes filed the lis pendens or shortly thereafter, well before the trial in 2007 and well before they moved to assert it after the 2007 trial, the entry of judgment, and this court's mandate in 2010. The claim that their counterclaim did not mature until after our mandate issued in 2010 fails.

B. Prejudice

¶21 CR 13(e) permits the assertion of after-arising counterclaims "by supplemental pleading." CR 15(d) provides:

Supplemental Pleadings. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit

him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

(Boldface omitted.)

¶22 Our Supreme Court has observed that prejudice to the opposing party is grounds for denial of leave to supplement pleadings under CR 15(d). *Herron*, 108 Wn.2d at 169. Undue delay and unfair surprise are factors we may consider in determining prejudice. *Herron*, 108 Wn.2d at 165-66. Here, allowing the L'Hommedieus to revive this action by asserting their counterclaim more than three years after it matured, more than three years after trial and entry of judgment, and after our mandate terminating review in 2010 unquestionably constitutes undue delay and unfair surprise and, thus, undue prejudice to the Lanes. The trial court did not abuse its discretion in 2010 when it denied the L'Hommedieus leave to supplement their pleadings to assert a claim that arose and matured in 2006.

¶23 We affirm.

HUNT and JOHANSON, JJ., concur.