# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parentage of C.C. | No. 54056-8-II |
| MARK ANTHONY CANTRELL, | |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CASIE JO RAY, | |
| Appellant. | |

GLASGOW, A.C.J.—CC was born in 2017 to Casie Jo Ray and Mark Anthony Cantrell, who began living apart in 2019. At the time of trial, Cantrell lived in Montesano and Ray lived Spokane. After a bench trial to resolve the parenting plan and child support for CC, the trial court orally ruled that the parties would share equal residential time with CC in alternating three-week intervals to minimize trips across the state for the two year old.

The trial court described the basic parameters of its decision in its oral ruling and required the parties to present a final parenting plan and child support order. The trial court approved a telephonic appearance for Ray's counsel for the hearing to present the written orders. Ray contested some aspects of the proposed final orders, but when counsel tried to appear by telephone, the trial court declined to allow the telephonic appearance and did not continue the presentment hearing so Ray's attorney could appear in person.

On appeal, Ray contests certain aspects of the orders and argues that the trial court erred by not allowing her attorney to appear by telephone at the presentment hearing. Ray also asserts

that the trial court erred by granting Cantrell's posttrial motion to amend his petition for a parenting plan to add the couple's second child, who was born soon after the trial. Cantrell requests appellate attorney fees as a sanction for what he claims is a frivolous appeal.

We hold that the trial court abused its discretion by preventing Ray's counsel from appearing by telephone, even though the trial court had previously approved a telephonic appearance, and by not continuing the presentment hearing so that counsel could participate. We reverse both the parenting plan and the child support order, but we affirm the order allowing the petition to be amended. We remand for the trial court to vacate the parenting plan and child support orders and to conduct a new presentment hearing with both counsel present. The trial court may enter temporary orders as necessary while proceedings on remand are pending. We deny Cantrell's request for attorney fees and sanctions.

FACTS

A.     Background

CC was born in July 2017 in Idaho to Ray and Cantrell, who lived together but never married. When CC was five months old, Cantrell got a job in Tumwater, so the family moved to Olympia, where they lived with Cantrell's family. Cantrell then purchased a home for the family in Montesano.

Early in 2019, Ray and Cantrell began living apart. Cantrell continued living in Montesano, while Ray relocated to Rochester. In March 2019, the Grays Harbor County Superior Court entered a temporary order requiring that CC spend equal time with both parents, alternating every four days.

Ray then filed a motion for a new temporary plan, asking the trial court to order alternating residential time on a weekly basis so she could more easily move home to Spokane. Ray's family and support network were in Spokane and she had virtually no support in Montesano. Ray suggested that each parent have CC for seven days at a time instead of four, reducing travel for CC to one day per week. Ray contended it would be in CC's best interest to "be surrounded by maternal family . . . during my residential time." Clerk's Papers (CP) at 106. After the trial court granted Ray's motion, Ray returned to Spokane. Ray and Cantrell began meeting around the summit of Snoqualmie Pass to hand off CC every Sunday, which meant CC spent nearly a full day in the car every week.

In summer 2019, the parties prepared for a trial to determine a final parenting plan and child support. During a deposition prior to trial, Ray disclosed that she was pregnant with a second child and that Cantrell was the father.

B.     Trial

At trial, each party testified about their hourly pay rates and typical work schedules. None of the testimony regarding income was contested at trial.

Ray and Cantrell each testified about their relationship with CC and their reasons for living in Spokane and Montesano. The parties disputed how much time CC should spend with each parent and whether one parent should move so that CC would not have to spend so much time traveling across the state. Neither parent argued the other was unfit. Both parties proposed parenting plans that listed Ray as the custodial parent.

Cantrell argued that he should continue to have CC half of the time and that Ray should return to the west side of the state because she worked remotely and could relocate more easily.

Ray asserted that she spent more time with CC than Cantrell did before the separation and contended that she should be the primary parent. She also argued that it would be very difficult for her to relocate to the west side of the state because she had no family or support system there, whereas her family in Spokane provided her and CC with a place to live and childcare while she worked full time. Ray proposed that before reaching school age, CC should live primarily with her in Spokane and visit Cantrell once a month for four days. She proposed Cantrell could visit CC one additional weekend per month if he came to Spokane.

At the end of trial, the trial court orally ruled that it would not direct Ray or Cantrell to move before CC reached school age because both had compelling reasons for living on opposite sides of the state. But the trial court determined that traveling back and forth from Spokane to Montesano every week was not in CC's best interest, so the trial court ordered Ray and Cantrell to alternate time with CC every three weeks instead of every week. The trial court stated that there would need to be a new hearing to establish the residential schedule when CC started school. And the trial court invited Ray's counsel, who lived in Spokane, to appear telephonically at that future hearing. The trial court did not mention child support in its oral ruling.

The trial court also told Ray's counsel that he could appear telephonically for the presentation of final orders for the parenting plan and child support. The judge stated, "[I]f you are close but need some decisions from me on minor details, let's set up a hearing that [Ray's counsel] can participate in by telephone . . . if he wishes. Otherwise, if you reach an agreed parenting plan, you can submit it ex parte." Verbatim Report of Proceedings (VRP) (Aug. 21, 2019) at 170.

C.    Motion to File Supplemental Pleading

Ray and Cantrell's second child, JC, was born in Spokane in September 2019, after the trial but before final orders were entered. Cantrell signed a paternity acknowledgment for JC that was filed with the state on September 11, 2019.

Cantrell then moved to amend the petition for a parenting plan to include JC. The basis for his motion was CR 15(d), which permits a party to serve a supplemental pleading regarding an event that happened after the original pleading.

Cantrell argued the supplemental pleading was appropriate because he did not know that Ray was pregnant when the case was filed in January 2019, and the "second child should be incorporated into this case, as there is an ongoing custody arrangement as to the first born child, [CC], under this cause number" and "[i]t makes the most sense for the second child to be included in the same case, as it involves the same parents and a sibling." CP at 153. Before the final orders regarding CC were entered, the trial court held a hearing on the motion to supplement the pleadings with an amended petition for a parenting plan that would address both CC and JC. Cantrell further explained at that hearing, "We want both children's cases to be heard together" because "the newborn's case is in Spokane, that would require two courts to be making decisions about one family." VRP (Sept. 30, 2019) at 172.

The trial court orally ruled that it would grant Cantrell's motion to supplement because "it makes no sense at all for different courts to be making decisions on this case regarding a parenting plan for two children who have the same biological parents." *Id.* at 176. But the trial court noted that CC's parenting plan would probably not be suitable for a newborn. The trial court anticipated that the parties might request a modification because the birth of the new baby "might warrant the

5

Court reconsidering the three week on and three week off" schedule. *Id.* at 177. The trial court concluded, "[R]eally what we're talking about is treating this amendment as if it were a new petition. There's just no point in requiring a new filing fee to be paid." *Id.* at 178. The trial court also stated that Ray could move to disqualify him "on any further hearings [for a parenting plan that included JC] after entry of the final parenting plan and the findings of fact [for CC]." *Id.* at 177-78.

D.      Substitution of Counsel and Presentment Hearing

In October 2019, Ray discharged her attorney and hired new counsel. Ray's new counsel e-mailed Cantrell's attorney asking about the status of the final orders. Cantrell's attorney explained that she and Ray's original counsel had been working on an agreed final order for the parenting plan and they had planned to enter the order ex parte if they could agree. Cantrell's attorney then e-mailed the court administrator to request a date for presenting the final orders, providing her availability, and copying Ray's new attorney.

The court administrator sent four date options. Ray's new attorney, who was also based in Spokane, responded to the administrator's e-mail, inquiring whether he could arrange to participate telephonically because in person participation would require travel and be expensive for his client.

The court administrator responded, "If the orders are agreed you don't have to be here to enter them. If they are not agreed you can see if [opposing counsel] is okay with you appearing by telephone." CP at 240. Referring to the wrong judge, the administrator said, "Judge Mistachkin routinely allows out of county defense attorneys to appear by telephone." *Id.*

Ray's attorney did not contact Cantrell's attorney about appearing by telephone, but spoke to Ray's original counsel and learned that the judge had already approved attendance by telephone.

6

On October 30, 2019, Cantrell's attorney sent Ray's new attorney a copy of the proposed orders. Ray's attorney objected to some aspects of the parenting plan and child support orders, including the designation of Cantrell as "custodian"[1] in the parenting plan because "from what I remember the judge did not favor one or the other as a custodian." CP at 242. Ray's counsel also stated he would request a hearing on child support "to make a proper determination" because he disagreed with the listed income amounts. *Id.*

On October 31, 2019, Ray's attorney e-mailed the court administrator and copied opposing counsel "to confirm my attendance at the presentment today by telephonic attendance pursuant to local rule." CP at 247. Ray's attorney also e-mailed the court administrator and opposing counsel, addressing the e-mail to "Judge Mistachkin" and indicating a belief that the hearing was that day. CP at 248. He attached a child support order reflecting his proposed changes.

The court administrator then informed Ray's attorney that the presentment hearing was scheduled for the next day, November 1, 2019, and was before Judge Edwards, not Judge Mistachkin.

On November 1, 2019, Ray's counsel called the court's telephone number and attempted to appear by telephone for the presentment hearing. According to counsel, the court administrator told him that Judge Edwards would not accommodate his appearance by telephone because he had not made prior arrangements to do so. Ray's counsel then asked the court administrator if the judge

---

[1] Although the term "custodian" has mostly been phased out of Washington law, the parenting plan at issue in this case designated Cantrell as CC's "custodian." Similarly, RCW 26.09.285 uses the term "custodian." For consistency with the record and RCW 26.09.285, we use the terms "custodian" and "custodial parent."

7

would "continue the matter so I could attend since I thought he had approved that type of appearance," but the court administrator told counsel that "she 'could not help [him].'" CP at 232.

At the presentment hearing, the trial court noted Ray's attorney's absence:

[F]or the record, counsel for Ms. Ray is not present. He contacted the court administrator's office for this court yesterday and again today and stated that he was going to participate by telephone; however, he never requested nor did he receive permission from the Court to participate by telephone. Had he requested, I would have denied it. Telephone hearings are very difficult to manage. Our telephone system doesn't seem to work very well. That's one of the reasons. And I occasionally allow attorneys to appear for very, very brief matters by telephone, but as a general rule, that is not a practice that is allowed in this court. So he is not here today and that's all I have got to say about it.

VRP (Nov. 1, 2019) at 6.

The trial court entered and signed Cantrell's proposed child support order and final parenting plan, which designated Cantrell as the "custodian" and set forth the alternating three-week schedule for CC but did not address a parenting plan for JC. However, the order included a provision stating that "the court granted the father's motion to amend the petition to include [JC] in the same court action as her sibling, [CC]." CP at 185. The trial court entered a separate order granting Cantrell's motion to file an amended petition for a parenting plan "as a supplemental pleading pursuant to CR 15(d) . . . to incorporate [JC]." CP at 210. The separate order required Ray to "dismiss any case involving [JC] in other counties," which included a parentage action regarding JC that Ray had filed in Spokane County. *Id.*

On the child support worksheets and order, Ray's and Cantrell's net monthly incomes were similar—$2,912 for Cantrell and $2,844 for Ray—despite the $5 per hour difference in their wages. Under the standard child support formula, Cantrell would owe Ray a transfer payment of $524 per month. But the trial court found that a deviation from the standard support payment under

RCW 26.19.075(1)(d) was appropriate because "[t]he child in this case . . . [s]pend[s] significant time with the parent who owes support [Cantrell]. The non-standard amount still gives [Ray's] household enough money for the child's basic needs." CP at 214. The trial court ordered Cantrell to pay Ray the statutory minimum transfer amount of $50.

Ray appeals the parenting plan and child support order as well as the order permitting Cantrell to file an amended petition for a parenting plan.

ANALYSIS

A.      Telephonic Appearance

Ray claims the trial court was biased against her after she obtained new counsel and the trial court should have permitted her new counsel to appear telephonically at the presentment hearing. Ray argues that the trial court violated the "Code of Judicial Conduct section 2.2 regarding impartiality" by "specifically and unfairly treat[ing] both Ms. Ray and her new counsel differently than her former counsel . . . for no clear reason." Opening Br. of Appellant at 11. She emphasizes that because she had no representation at the presentment hearing, the trial court should have "either continued the hearing or reserved their entry for written input from Ms. Ray's new counsel." Reply Br. of Appellant at 10. Ray asks this court to overturn the final orders and remand for another presentment hearing.

Although this record does not reflect bias or a violation of the Code of Judicial Conduct, we hold that the trial court nonetheless abused its discretion by not permitting Ray's counsel to appear by telephone when the trial court had previously indicated it would allow telephonic appearance for presentment and by not continuing the hearing so counsel for both parties could appear.

1.      Local rule on telephonic appearances and judicial bias

In 2019, former GHCLR 7(b)(5) (2019) governed telephonic appearances at hearings. The rule provided, "Telephonic appearances are not allowed on motion docket calendars. All other requests for appearing at hearings by telephone for purposes of oral argument shall be approved by the Court and specially set by the Court Administrator." Former GHCLR 7(b)(5).

CJC 2.2 requires judges to "perform all duties of judicial office fairly and impartially." The "judge must be objective and open-minded" and "interpret and apply the law without regard to whether the judge approves or disapproves of the law in question." CJC 2.2, cmts. 1-2. But "[w]hen applying and interpreting the law, a judge sometimes may make good-faith errors of fact or law" which "do not violate this Rule." CJC 2.2, cmt. 3.

"The trial court is presumed to perform its functions without bias or prejudice." *State v. Hecht*, 2 Wn. App. 2d 359, 369, 409 P.3d 1146 (2018). To overcome this presumption, a party must provide "specific facts establishing bias," which "[j]udicial rulings alone almost never constitute." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). "'Casual and unspecific allegations of judicial bias provide no basis for appellate review.'" *Hecht*, 2 Wn. App. 2d at 369 (quoting *Rich v. Starczewski*, 29 Wn. App. 244, 246, 628 P.2d 831 (1981)).

Under "the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). This doctrine "requires more than an impartial judge; it requires that the judge also appear to be impartial." *Id.* "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes a reasonable observer knows and understands all the relevant facts."

*Id.* "A party asserting a violation of the doctrine must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the decision maker; mere speculation is not enough." *In re Pers. Restraint of Haynes*, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000).

Here, Ray does not provide specific facts sufficient to support her contention that the trial court was biased or violated a canon of judicial conduct. *See Hecht*, 2 Wn. App. 2d at 369. A judicial ruling "almost never constitute[s] a valid showing of bias." *Davis*, 152 Wn.2d at 692. And although the trial court had previously granted Ray's original counsel's request to appear telephonically, its refusal to allow her new counsel to appear telephonically does not appear to have been the result of a negative personal opinion toward Ray or her counsel. We conclude that Ray has not shown evidence of actual bias, the appearance of partiality, or any other judicial conduct violation.

2.    Courtroom management and abuse of discretion

While this record does not show any evidence of judicial bias, Ray argues that the trial court erred by refusing to allow telephonic appearance or continue the hearing, and we agree. The combined effect of preventing counsel from appearing by telephone and not continuing the hearing after Ray's original counsel was assured that telephonic participation would be allowed, constituted an abuse of discretion that undermined due process.

"Trial judges have wide discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially." *In re Marriage of Zigler & Sidwell*, 154 Wn. App. 803, 815, 226 P.3d 202 (2010). Appellate courts, "therefore, review a trial judge's courtroom management decisions for abuse of discretion." *Id.* "'A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard.'" *In re*

*Marriage of McNaught*, 189 Wn. App. 545, 552, 359 P.3d 811 (2015) (internal quotation marks omitted) (quoting *In re Marriage of Horner*, 151 Wn.2d 884, 889, 93 P.3d 124 (2004)).

Here, it was manifestly unreasonable to prevent Ray's counsel from appearing by telephone at the presentment hearing where the trial court twice gave Ray's previous attorney explicit permission to do so. The only restriction the trial court noted was that the hearing needed to be "sometime other than a Monday morning." VRP (Sept. 30, 2019) at 179. Nor was the presentment hearing a motion hearing, the only kind of hearing for which telephonic appearances were categorically prohibited at the time under former GHCLR 7(b)(5). Moreover, Ray's new counsel properly entered a notice of substitution, undertaking the role previously served by Ray's original counsel. And the court administrator told counsel that "Judge Mistachkin routinely allows out of county defense attorneys to appear by telephone." CP at 240. Although the administrator named the wrong judge, it further reinforced the reasonableness of Ray's counsel's understanding that he could appear telephonically.

There does not appear to have been any reason why Ray's original counsel could not have appeared by telephone under former GHCLR 7(b)(5) if he had remained on the case. Accordingly, the trial court's refusal to allow Ray's validly substituted new counsel to participate by telephone was inconsistent with the court's prior rulings, counsel reasonably relied on the trial court's prior grant of permission, and the trial court offered no explanation for changing its mind. Although the trial court had "wide discretion" to manage the courtroom, we conclude that the inconsistency of the trial court's actions on the day of the hearing compared to its prior grant of permission amounts to abuse of discretion. *Zigler & Sidwell*, 154 Wn. App. at 815.

Moreover, the trial court acted outside the range of acceptable choices by not continuing the case so Ray's counsel could appear in person if it could not accommodate a telephonic appearance, especially considering the effect on Ray's due process rights of leaving her unrepresented in the presentment hearing where contested issues were resolved. Appellate courts consider several factors in assessing whether the trial court should have granted a continuance, including the prior history of the litigation and the possible prejudice to the adverse party. *Trummel v. Mitchell*, 156 Wn.2d 653, 670-71, 131 P.3d 305 (2006). As explained above, the prior history of the case contemplated a hearing at which counsel for both parties would be present. Even if a valid reason existed for not allowing Ray's new attorney to appear by telephone, the trial court should then have continued the hearing, rather than entering the contested orders without allowing Ray's counsel to participate.

3. Prejudice

Ray has also explained how her counsel's inability to appear prejudiced her with regard to entry of the orders. With regard to the parenting plan, both parties originally proposed designating Ray as the custodial parent, and the designation of the "custodian" was not disputed at trial. In contrast, the final parenting plan that Cantrell proposed posttrial listed Cantrell as the custodial parent, raising this issue for the first time. Although Cantrell contends that the "custodian" designation "does not affect Ms. Ray's rights and responsibilities under the parenting plan," this designation nonetheless has collateral consequences under other state and federal laws. Br. of Resp't at 16.

RCW 26.09.285 provides:

> Solely for the purposes of all other state and federal statutes which require a designation or determination of custody, a parenting plan shall designate the

13

parent with whom the child is scheduled to reside a majority of the time as the custodian of the child. However, this designation shall not affect either parent's rights and responsibilities under the parenting plan.

Because "RCW 26.09.285 deems the parent with whom the child is scheduled to reside a majority of the time the custodian," the "custodian" designation has no effect on parental rights under the parenting plan of parents who share equal residential time. *In re Parentage of C.M.F.*, 179 Wn.2d 411, 422, 314 P.3d 1109 (2013).

Nonetheless, the "custodian" designation does affect other "state and federal statutes which require a designation or determination of custody." RCW 26.09.285. Division Three has recognized that "[t]he 'state and federal statutes' likely referred to in RCW 26.09.285 include the Food Stamp Program, 7 U.S.C. § 2015; the Criminal Code (Kidnapping), 18 U.S.C. § 1204; federal regulations issued on Veterans' Benefits, 38 C.F.R. §§ 3.24, 3.57, and 3.850; Social Security, 42 U.S.C. § 1396r-la; and Juvenile Justice and Delinquency Prevention—Missing Children, 42 U.S.C. § 5773 and § 5775," for example. *In re Marriage of Kimpel*, 122 Wn. App. 729, 734 n.1, 94 P.3d 1022 (2004). The designation of the custodial parent has consequences outside of the parenting plan.

Here, the trial court did not make any findings in its oral ruling about which parent should be designated "custodian." Prior to the presentment hearing, Ray's new counsel e-mailed Cantrell's counsel stating that he disagreed with the designation of Cantrell as "custodian," and noting "the judge did not favor one or the other as custodian." CP at 242. Because the trial court made no rulings about which parent should be designated "custodian," the parties could validly argue the issue at the presentment hearing. But because the trial court did not allow Ray's counsel to participate in the presentment hearing, and Ray had been listed as the "custodian" in all prior

proposed parenting plans including Cantrell's, Ray had no chance to argue about the "custodian" designation. The trial court simply entered Cantrell's proposed final parenting plan. Designating Cantrell the "custodian" without giving Ray any opportunity to be heard on the issue unreasonably subjected Ray to potential consequences under state and federal law. This was an abuse of discretion. *See Trummel*, 156 Wn.2d at 670-71; *Zigler & Sidwell*, 154 Wn. App. at 815.

With regard to the child support order, the trial court also did not address child support in its oral ruling after the trial. Because Ray's counsel was excluded from the presentment hearing, Ray did not have a chance to argue about whether the written child support order that Cantrell presented was inconsistent with the testimony at trial. In particular, Ray contests the income amounts and the trial court's deviation from the standard child support calculation in the child support order. The trial court entered written findings at the presentment hearing finding that deviation from the standard child support calculation would not significantly increase the burden on Ray and was appropriate under RCW 26.19.075(1)(d). But Ray's counsel did not have an opportunity to argue about the correctness of the income amounts, the findings, or the ultimate child support award because he was excluded from the presentment hearing.

In sum, the exclusion of Ray's counsel from the presentment hearing prejudiced her with regard to the parenting plan and the child support order.[2]

---

[2] Even though the trial court also signed the order allowing Cantrell to file the supplemental pleading adding JC to the petition at the same presentment hearing, Ray's first counsel had a full opportunity to argue about that issue in a hearing he attended in person on September 30, 2019, and the trial court gave a detailed oral ruling at the end of that hearing. Ray does not contend that the written order allowing supplementation was inconsistent with the trial court's oral ruling.

B.      Supplemental Pleading

Ray asserts that the trial court should not have allowed Cantrell to file a supplemental pleading to amend the petition for a parenting plan to include JC. The crux of Ray's argument is that the trial court improperly limited her ability to bring a parentage action in Spokane County under RCW 26.26A.420, which permits a party to pursue a parentage action in the county in which the child was born. Because JC was born in Spokane County, Ray maintains that she should not have been required to dismiss the Spokane County parentage action, citing policy concerns relating to the parentage statute.

Cantrell responds that the trial court properly permitted the supplemental pleading under CR 15(d) and it is wholly impractical to have two counties making orders about the same family. We agree with Cantrell.

"We review the trial court's grant or denial of leave to amend or supplement the pleadings for abuse of discretion." *Lane v. Skamania County*, 164 Wn. App. 490, 495, 265 P.3d 156 (2011). In deciding whether to permit a party to supplement the pleadings under CR 15(d), the trial court may consider "prejudice to the opposing party." *Id.* at 502.

CR 15(d) provides that a "court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Here, Cantrell had already formally acknowledged paternity of JC and so no separate action was necessary to establish paternity. Assuming without deciding that RCW 26.26A.420(1) requires a parentage action to be brought in the county in which the child was born, paternity does not appear to have been in controversy here. Moreover, it would have been impractical to have two county

16

courts deciding family law issues for two children with the same parents, and it would have been more expensive and inefficient to litigate a separate action for JC in a different county, especially given that it involved many of the same issues presented in the action regarding CC.

The trial court did not simply incorporate the newborn JC into the parenting plan it had adopted for CC. Instead, the trial court allowed JC to be added to the petition and contemplated a new hearing that would take into consideration JC's needs, as well as the family as a whole. As a result, Ray was not prejudiced. Ray's original counsel acknowledged that "[w]hether we argue [JC] here or even in Spokane, I don't see a difference." VRP (Sept. 30, 2019) at 174.

We conclude that the trial court properly permitted Cantrell to file a supplemental pleading for an amended petition that would allow parenting plans for JC and CC to be decided in one county by one judge.

## C.    Attorney Fees

Cantrell requests attorney fees on appeal as a sanction under RAP 18.9(a) for a frivolous appeal. We deny this request. Because we reverse the final parenting plan order and the child support order, Ray's appeal was not frivolous.

### CONCLUSION

We reverse both the parenting plan and the child support order, but affirm the order allowing the petition to be amended. We remand for the trial court to vacate the parenting and child support orders and to conduct a new presentment hearing with both counsel present. The trial court may enter temporary orders as necessary while proceedings on remand are pending. We deny Cantrell's request for attorney fees and sanctions.

No. 54056-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, A.C.J._

We concur:

_Worswick, J._

_Veljacic, J._